**UNITED STATES of America, Plaintiff/Appellant,**

v.

**Maria Eugenia CARRILLO–BERNAL, Defendant/Appellee.**

**No. 94–2169.**

United States Court of Appeals, Tenth Circuit.

June 28, 1995.

---

John J. Kelly, U.S. Atty., Albuquerque, NM (Judith A. Patton, Asst. U.S. Atty., Las Cruces, NM, with him on the brief), for plaintiff-appellant.

Barbara A. Mandel, Asst. Federal Public Defender, Las Cruces, NM, for defendant-appellee.

Before HENRY, Circuit Judge, McKAY, Senior Circuit Judge and SHADUR, Senior District Judge *.

SHADUR, Senior District Judge.

Following an evidentiary hearing on a motion by Maria Eugenia Carrillo–Bernal ("Carrillo–Bernal") for the suppression of evidence in her impending criminal case, the district court granted that motion. That order is the subject of the United States' attempted appeal here. We dismiss the appeal for failure to comply with the certification requirement of 18 U.S.C. § 3731 ("Section 3731").

*Background*

At about 5:45 p.m. on March 11, 1994 Carrillo–Bernal was stopped at the primary inspection area of the United States Border Patrol checkpoint outside Las Cruces, New Mexico, by Border Patrol Agent Randy Holmes ("Holmes"). Holmes later testified that his suspicions were aroused during routine questioning by the exceptional cleanliness of Bernal's automobile and the absence of luggage in the passenger compartment. Holmes asked Carrillo–Bernal what was in the trunk. She told him that it was empty. Holmes then asked if he could see for him-

self. Carrillo–Bernal agreed that he could and was directed to a secondary inspection area where Holmes conducted his search, finding jumper cables and a jug of water in the trunk. Holmes next asked if he could conduct a K–9 sniff of the vehicle. Again Carrillo–Bernal agreed. When the dog "Nick" alerted to the presence of drugs, a further search of a secret compartment that Holmes and other agents found in the vehicle turned up 60 pounds of marijuana. Carrillo–Bernal was advised of her rights and placed under arrest. At first she refused to sign a *Miranda* waiver form and invoked her right to counsel, but she later made self-incriminating remarks while being transported to jail.

On March 17, 1994 Carrillo–Bernal was indicted for possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), and she later entered a plea of not guilty. On May 31, 1994 the district court suppressed both the marijuana and the ensuing self-incriminating statements on the grounds that the marijuana was obtained in violation of Carrillo–Bernal's Fourth Amendment right against unreasonable searches and that the statements were the fruit of that poisoned tree. It was the district court's view that by questioning Carrillo–Bernal about the contents of the trunk in the absence of "suspicious circumstances," Holmes exceeded the scope of a constitutionally permissible checkpoint stop as set out in *United States v. Martinez–Fuerte*, 428 U.S. 543, 556–64, 96 S.Ct. 3074, 3080–85, 49 L.Ed.2d 1116 (1976), *United States v. Ludlow*, 992 F.2d 260, 262–65 (10th Cir.1993) and *United States v. Sanders*, 937 F.2d 1495, 1498–1502 (10th Cir.1991). On July 11 the district court denied the United States' motion for reconsideration. On July 19 the United States filed a notice of appeal in accordance with Fed.R.App.P. 4(b).

That decision to appeal was made by Assistant United States Attorney Judith Patton in consultation with an unidentified attorney from the Appellate Section of the Department of Justice (the "DOJ Attorney"). Section 3731 governs interlocutory government

---

* The Honorable Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

appeals in a criminal case and provides in relevant part (emphasis supplied):

> An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, *if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.*
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.
>
> The provisions of this section shall be liberally construed to effectuate its purposes.

Because the certification called for by Section 3731 was not filed at the time the appeal was taken, on August 23 we alerted the parties to that deficiency. On August 26 this representation was made to the district court over the signature of Acting United States Attorney James Tierney:

> The undersigned has reviewed the Memorandum Opinion and Order suppressing the evidence in the above-referenced criminal cause. The undersigned therefore hereby certifies that this appeal is not taken for the purpose of delay, and that the evidence suppressed is substantial proof of a fact material in the proceeding.

On September 30, 1994 we granted the United States' motion to supplement the record with the August 26 certificate.

Here is the government's explanation for its failure to file a timely Section 3731 certificate (Br. 9–10):

> Undersigned counsel for the United States [AUSA Patton] works in the Las Cruces, New Mexico, branch office of the district. Counsel filed the Notice of Appeal on July 19, 1994, in haste and in an abundance of caution, to insure she would not miss the thirty-day jurisdictional requirement. Counsel planned to be out of the office and away from Las Cruces from July 25, 1994, until August 15, 1994. An attorney from the Appellate section of the Department of Justice, who had already reviewed the case, advised counsel to file the notice of appeal immediately. Undersigned counsel filed the Notice of Appeal almost immediately after learning of Judge Vazquez' ruling. Inadvertently, counsel failed to file the certificate pursuant to 18 U.S.C. § 3731 before leaving the office for three weeks.
>
> The branch office for the Office of the United States Attorney for the District of New Mexico at Las Cruces is an extremely high-volume office. It is located near the international border. In addition to handling reactive cases from the United States Border Patrol checkpoints and United States Customs Service Ports of Entry, the office manages cases from numerous federal and state agencies and task forces in southern New Mexico. While the pace of the practice is no excuse for the filing error, counsel hopes this Honorable Court will accept the honest explanation for the omission and permit the prosecution of this most important appeal.

To dispel any possible misunderstanding on the part of the United States as to the function and importance of Section 3731's certification requirement, we are compelled to revisit at some length an issue that we thought had been laid to rest by our recent decision in *United States v. Hanks,* 24 F.3d 1235 (10th Cir.1994).

*Section 3731's Certification Requirement*

■ This Court has long held that the government's failure to file a timely Section 3731 certificate does not deprive the court of jurisdiction (*United States v. Welsch,* 446 F.2d 220, 224 (10th Cir.1971)). Instead the relevant inquiry is whether the reviewing court should exercise its discretion to entertain the appeal in light of such defect, as provided by Fed.R.App.P. 3(a):

> Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action

as the court of appeals deems appropriate, which may include dismissal of the appeal.

*Hanks* dismissed an appeal from an order suppressing on *Miranda* grounds certain statements made by a defendant, finding "no reason to excuse the government's failure timely to comply with the § 3731 certification requirement" (24 F.3d at 1239). *Hanks, id.* at 1238–39 identified several factors favoring dismissal: (1) a 2½ month delay in filing; (2) the fact that final resolution of any criminal case weighs heavily on a defendant's mind (even if he or she is out on bail); (3) the government's failure to explain why it did not file the certificate in a timely manner; (4) the government's failure to demonstrate important legal issues needing clarification or other significant reason to hear the appeal; (5) the government's lackluster response upon learning of the deficiency and concomitant waste of judicial resources;[1] and (6) the government's failure "even to acknowledge that the certification requirement in § 3731 should be taken seriously." *Hanks, id.* at 1239 (emphasis in original) put these teeth into Section 3731's certification requirement:

> We believe that we must give meaning to the § 3731 requirement that the government certify that it is taking the appeal for a proper purpose. "[T]he certificate process cannot serve its function unless the responsible prosecuting official makes a thorough and conscientious analysis of the case *before* deciding to appeal. The certificate is the official's representation that such an analysis has been made, and we must therefore require the certificates to be filed promptly." *United States v. Herman,* 544 F.2d 791, 794 n. 4 (5th Cir.1977). A certification that the appeal has not been taken for the purpose of delay would be a hollow protection for a defendant's right to resolve his or her case quickly if we were regularly to allow prosecutors to wait months before verifying the propriety of their appeals without requiring some explanation for the delay or some showing of

why we should accept the late filing of the certificate. Post hoc certification that an appeal was not taken for the purposes of delay reduces the § 3731 requirement to meaningless formality.

■ Here the United States seeks to distinguish *Hanks* point by point, arguing that the certificate was filed only 16 days late (point 1), that Carrillo–Bernal was out on bond (point 2), that untimely filing was the regrettable byproduct of a busy office (point 3), that important legal issues are present (point 4) and that the initial oversight was diligently corrected (point 5). Finally the United States points to Section 3731's liberal construction provision in support of its request that we proceed to the merits of the appeal.

Even in those terms the government's response leaves something to be desired. As to point 2 it does not speak at all to what *Hanks,* 24 F.3d at 1238 (relying on two Supreme Court decisions) had said:

> Hanks has been out on bond during this time. Nonetheless, the government's appeal has delayed final resolution of this case, which we do not doubt weighs heavily on the defendant's mind, even though he is free on bond.

As to point 3 the government's explanation amounts to nothing more than a confession of negligence: Every good lawyer is (or should be) a busy lawyer, but that does not excuse (although it may temper the judicial response to) the lawyer's missing a deadline. Even more importantly, we find it difficult to credit as an "important legal issue needing appellate clarification" (point 4) the need to review on the merits the credibility determination by a district judge who found that an overzealous Border Patrol Agent had seized on any claimed rationalization to justify a predetermined search (with canine assistance) at a secondary inspection area, irrespective of the existence or nonexistence of reasonable

---

1. In *Hanks* the government filed its otherwise timely notice of appeal on June 1, 1993; on July 15 defendant raised the certification issue; on August 24 the government filed its certificate with the district court; the government did not attempt to supplement the record nor did it address the issue in its original appellate brief; and the panel hearing the appeal learned of the late filing only at oral argument, when it then ordered supplemental briefing on the issue (*Hanks,* 24 F.3d at 1237–38).

grounds for suspicion. More on this last point later.

But in addition to those deficiencies, what the United States has really failed to do is demonstrate that it takes Section 3731's certification requirement seriously (point 6). Despite *Hanks'* admonition against post hoc certification (24 F.3d at 1239), this case again appears to reflect the same pattern. What the United States has said is that the decision to appeal was made by AUSA Patton and the DOJ Attorney "almost immediately after" learning of the district court ruling, with no representation having been made by the government (and none otherwise evident from the record) that the decision was preceded by a reasoned determination as to the considerations that Congress has expressly incorporated into Section 3731 (and into the earlier versions of the Criminal Appeals Statute) since its inception. Instead the certificate that was eventually filed has all the earmarks of a rubber stamp—or in *Hanks'* words a "meaningless formality." It was sworn to by Acting United States Attorney Tierney, who on the record before us had nothing to do with the case up to that moment. He tells us that his post hoc understanding of the matter was gleaned from the district court order. By definition that does not constitute conscientious pre-appeal analysis by the responsible prosecuting official. Nor is it explained how a review of that document conducted by an attorney who was otherwise not involved in the case enabled him to represent the motivation and basis for the appeal by the actual decisionmakers in the first instance.

It is important to understand why something that might be perceived in purely surface terms as a formal requirement is viewed more seriously by this and other Courts of Appeals (in the latter respect see, e.g., *United States v. Miller,* 952 F.2d 866, 875–76 (5th Cir.1992); *United States v. Eccles,* 850 F.2d 1357, 1359–60 (9th Cir.1988)). For that purpose it is useful to examine the relevant statutory provision from a historical perspective.

Government appeals in criminal cases have traditionally been "something unusual, exceptional, not favored" (*Carroll v. United States,* 354 U.S. 394, 400, 77 S.Ct. 1332, 1336, 1 L.Ed.2d 1442 (1957)) and for the greater part of this century were viewed with extreme skepticism. By holding that in the absence of express legislative authority the government has no right to appeal in a criminal case, *United States v. Sanges,* 144 U.S. 310, 12 S.Ct. 609, 36 L.Ed. 445 (1892) set the stage for what would become for the United States Attorney General a 70–year quest to secure from Congress the right to appeal certain district court rulings. Much later *Arizona v. Manypenny,* 451 U.S. 232, 246, 101 S.Ct. 1657, 1666–67, 68 L.Ed.2d 58 (1981) (citations omitted) explained the twofold concerns that underlie the presumption against government criminal appeals:

> Both prudential and constitutional interests contributed to this tradition. The need to restrict appeals by the prosecutor reflected a prudential concern that individuals should be free from the harassment and vexation of unbounded litigation by the sovereign. This concern also underlies the constitutional ban against double jeopardy, which bars an appeal by the prosecutor following a jury verdict of acquittal. In general, both concerns translate into the presumption that the prosecution lacks appellate authority absent express legislative authorization to the contrary.

To return to *Sanges,* it prompted the Attorney General to launch repeated efforts to secure enabling legislation: no fewer than seven proposals in twelve years by five different Attorneys General, all designed to obtain for prosecutors what the Supreme Court had said they could have only by congressional action (Philip Kurland, *The MERSKY Case and the Criminal Appeals Act: A Suggestion for Amendment of the Statute,* 28 U.Chi.L.Rev. 419, 446–55 (1961); Note, Scott Shapiro, *Reviewing the Unreviewable Judge: Federal Prosecution Appeals of Mid–Trial Evidentiary Rulings,* 99 Yale L.J. 905, 907–09 (1990)).

Those repeated efforts failed to yield the desired result. It was not until President Theodore Roosevelt entered the lists because he viewed a district court as having thwarted his antitrust policies by directing a verdict in defendants' favor in *United States v. Armour*

*& Co.*, 142 F. 808 (N.D.Ill.1906) (the famous "Beef Trust Case") that Congress responded by enacting the Criminal Appeals Act of 1907 (Pub.L. No. 223, 34 Stat. 1246 (1907)—what has since become, in considerably revised form, Section 3731)). According to *United States v. Sisson*, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970), the Senate's three-day floor debate on the proposed legislation "[r]eflect[ed] the deep concern that the legislation not jeopardize interests of defendants whose cases were appealed by the Government" (*id.* at 295, 90 S.Ct. at 2132) and, more generally (*id.* at 298, 90 S.Ct. at 2134):

> [T]he legislative history reveals a strong current of congressional solicitude for the plight of a criminal defendant exposed to additional expense and anxiety by a government appeal and the incumbent possibility of multiple trials.

That original Criminal Appeals Act was exceedingly narrow in scope—in particular it made no provision for the appeal of suppression orders. That latter possibility was not given serious consideration until Congress focused its attention on the national drug problem during the mid–1950's. Even though the Attorney General's representative then testified in favor of a proposed amendment to the Criminal Appeals Act to allow the government to appeal suppression orders in all criminal cases (S.Rep. No. 1997, 84th Cong., 2d Sess. 11 (1956)), Congress was persuaded only as to drug cases. It enacted this provision as part of the Narcotic Control Act of 1956 (18 U.S.C. § 1404, later repealed, Pub.L. 91–513, Title III, § 1101(b)(1)(A), 84 Stat. 1291 (1970)) (emphasis supplied):

> In addition to any other right to appeal, the United States shall have the right to appeal from an order granting a motion for the return of seized property and to suppress evidence made before the trial of a person charged with a violation of—
>
> [designated narcotics offenses]

This section shall not apply with respect to any such motion *unless the United States attorney shall certify, to the judge granting such motion, that the appeal is not taken for purposes of delay.* Any appeal under this section shall be taken within 30 days after the date the order was entered and shall be diligently prosecuted.

From the government's perspective the limited scope of the quoted provision was a disappointment (S.Rep. No. 1997, 84th Cong., 2d Sess. 19 (1956)), and the Attorney General redoubled his efforts to extend the right to appeal suppression orders across the board (*DiBella v. United States*, 369 U.S. 121, 130–31, 82 S.Ct. 654, 660, 7 L.Ed.2d 614 (1962)). Those efforts were given concrete impetus by *Carroll*, which refused to entertain an appeal from a district court order suppressing gambling paraphernalia. In rejecting the government's argument that suppression orders should be considered appealable final decisions, *Carroll*, 354 U.S. at 407–08, 77 S.Ct. at 1340–41 (footnote omitted) invoked the venerable presumption against government criminal appeals and highlighted an important underlying practical concern:

> If there is serious need for appeals by the Government from suppression orders, or unfairness to the interests of effective criminal law enforcement in the distinctions we have referred to, it is the function of the Congress to decide whether to initiate a departure from the historical pattern of restricted appellate jurisdiction in criminal cases. We must decide the case on the statutes that exist today, in light of what has been the development of the jurisdiction. It is only through legislative resolution, furthermore, that peripheral questions regarding the conduct of government appeals in this situation can be regulated. Some of the problems directed at legislative judgment involve such particulars as confinement or bail of the defendant, acceleration of the Government's appeal, and discretionary limitation of the right to take the appeal.

That language was followed by a footnote (*id.* at 408 n. 23, 77 S.Ct. at 1340) observing that whenever Congress had in fact allowed a government appeal, it had invariably addressed one or more of the listed "peripheral questions" (confinement, timing and discretionary limitations), including the Narcotic Control Act's requirement that the government certify that the appeal is not taken for purposes of delay.

When during the following year the Senate Subcommittee on Improvements in the Federal Criminal Code took up the Attorney General's legislative proposal to permit the appeal of pretrial suppression orders in all types of criminal cases, the Subcommittee expressly took the third of those questions (discretionary limits) into account (S.Rep. No. 1478, 85th Cong., 2d Sess. 16 (1958)):

> To insure against unnecessary delay by the taking of frivolous appeals, the legislation the subcommittee proposes will provide (1) that the United States attorney shall certify to the lower court that the appeal is not taken for the purpose of delay, and (2) that the prosecution is unable to proceed without the evidence which has been suppressed.

That governmental effort (like the many that had preceded it) still proved unsuccessful—it was fully ten years before the proposed legislation became law.

On April 27, 1967 Representative Thomas Railsback submitted a bill (H.R. 8654, 90th Cong., 1st Sess. (1967)) to amend the Criminal Appeals Act by providing the government the right to appeal:

> From an order, granting a motion for return of seized property or a motion to suppress evidence, made before the trial of a person charged with a violation of any law of the United States, if the United States attorney certifies to the judge who granted such motion that the appeal is not taken for purposes of delay and that the evidence is a substantial proof of the charge pending against the defendant.

In his statement of support Representative Railsback quoted a passage from *DiBella*, 369 U.S. at 124, 82 S.Ct. at 656 describing the hazards of piecemeal and leaden-footed administration of the criminal law, and he explained how his bill addressed those concerns (*Anti–Crime Program: Hearings before Subcomm. No. 5 of the Comm. on the Judiciary*, 90th Cong., 1st Sess. 1530–33 (1967)):

> It seems [ ] that any action by the Congress to provide for additional grounds for appeal by the Government in criminal trials must be tightly drawn and must preserve all of the constitutional rights of the defendant. Therefore, I believe certain safeguards in such appeals are necessary ... [T]o avoid frivolous appeals the attorney who seeks the appeal must certify that the evidence suppressed in the pretrial motion represents a substantial proof in his case against the accused.

H.R. 8654 was eventually passed as Title VIII of the Omnibus Crime Control and Safe Streets Act of 1968 (Pub.L. No. 90–351, 82 Stat. 197 (1968)). Minor subsequent amendments brought Section 3731 to its current form.

Although this opinion has spoken for the most part in terms of the delay factor that forms part of the Section 3731 certification, it should be remembered that Congress has made the materiality of the evidence in dispute an equal partner in that certification. And although that requirement is specific-case-oriented rather than addressing the general jurisprudential significance of the legal questions presented, we are relatedly mindful (as was the *Hanks* court, 24 F.3d at 1239) of the non-criticality of the particular substantive issues posed here to an orderly development of the corpus juris of suppression doctrine. This court (like many others) has been called on frequently over the past several years to deal with variants of the facts presented by this appeal. No single case such as this one can make any material incremental contribution to the law of suppression in the course of what Benjamin Cardozo long ago [2] referred to as "leav[ing] it to be 'pricked out' by a process of inclusion and exclusion in individual cases" (*The Paradoxes of Legal Science* 96 (1928))—and in this area of substantive law Carrillo–Bernal's case provides a graphic example of that, for the district court's ruling was so much a function of the court's credibility determinations to which we have already referred. It is in that light that the related delay factor must be examined—and despite the prompt handling of this appeal, almost a full year has

---

**2.** Justice Cardozo was then serving on the New York Court of Appeals, before he continued his distinguished career by succeeding Justice Holmes as a Justice of the United States Supreme Court.

elapsed since the district court's suppression ruling, with the charges hanging over defendant's head all the while (as *Hanks* has pointed out).

What separates this opinion from the dissent—which certainly reflects a reasoned though different resolution of the competing considerations—is a different weighing of those considerations. Every one of the oft-recurring officer-search cases presents a somewhat different scenario, calling in turn for the application of the case law's previously-announced standards to the current factual variation. In our majority view the present case, though it is of course concededly somewhat different (as every new case is) from those that have gone before, is not sufficiently so as to merit our forgoing the far less frequently recurring opportunity to emphasize forcefully the lesson of *Hanks:* As Section 3731 directs, *every* prosecutorial decision to take an interlocutory appeal from an adverse suppression ruling must be preceded by a reasoned prosecutorial decision in the terms expressly set out in that statute.

In summary, this somewhat extended historical excursion has illuminated the exceptional nature of governmental appeals in criminal cases—proceedings that have been curbed by the courts and carefully circumscribed by Congress out of a desire (among other reasons) to safeguard individuals from the special hazards inherent in prolonged litigation with the sovereign. As to suppression orders, those concerns have been translated into the express requirement that the prosecutor contemporaneously certify to the district court that the appeal is not taken for purposes of delay and that the evidence is critical. It required a great deal of time and effort by the United States Attorney General to extract from Congress any right to appeal such orders. Both *Hanks* and this case reflect this court's determination that we do not ask too much of government attorneys, in their exercise of that right, to slow down long enough to conduct their evaluations in a manner and at a time that are consistent with Section 3731's history and the important interests that the certification requirement was designed to protect.

Accordingly we DISMISS the appeal.

HENRY, Circuit Judge, dissenting.

I agree fully with the majority's thoughtful and scholarly analysis of the history and significance of 18 U.S.C. § 3731. However, for several reasons, I do not agree that the government's appeal should be dismissed.

First, I do not think that the government's conduct regarding the Section 3731 certificate can be equated with the government's conduct in *United States v. Hanks,* 24 F.3d 1235 (10th Cir.1994). In contrast to *Hanks,* the record here does not indicate that the government "thought so little of the statutory obligation that it did not even bother to respond to the appellee's argument or to advise us of its late filing of the certificate until we explicitly confronted the issue during oral argument." *Id.* at 1239. Instead, when notified of the failure to file the certificate, the government acted promptly to supplement the record on appeal. In addition, the government's briefs and its presentation at oral argument[1] have convinced me that the cavalier approach to the Section 3731 requirements that we identified in *Hanks* is not present here.

Moreover, I believe this case involves "important legal issues needing appellate clarification," *id.,* such that dismissal is not warranted. The district court held that an agent's question regarding the contents of the trunk of a vehicle stopped at a permanent border checkpoint "exceeded the scope of limited inquiry permissible at permanent checkpoints as delineated in *Martinez–Fuerte* and subsequent Tenth Circuit decisions." District Court Memorandum Opinion and Order, Rec. doc. 24, at 13 (citing *United States v. Martinez–Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976)). However, several of our decisions seem to me to have taken a more expansive view of the scope of questioning allowed at a border checkpoint without reasonable suspicion or

---

1. The United States Attorney for the District of New Mexico personally argued this case, though it arose before his term commenced.

suspicious circumstances. *See United States v. Rascon–Ortiz,* 994 F.2d 749, 752 (10th Cir.1994) ("[A] few brief questions concerning such things as vehicle ownership, cargo, destination, and travel plans may be appropriate if reasonably related to the agent's duty to prevent the unauthorized entry of individuals into this country and to prevent the smuggling of contraband."); *United States v. Ludlow,* 992 F.2d 260, 265 n. 4 (10th Cir.1993) ("Questions regarding … citizenship and the contents of the vehicle were of course directly related to the Border Patrol agent's duties."). In my view, whether, in the absence of reasonable suspicion or suspicious circumstances, the agent could ask Ms. Carillo–Bernal what was in the trunk of the car she was driving through a border checkpoint is an important legal question that warrants our consideration.

I do not condone the government's failure to timely file the Section 3731 certificate. However, given our broad discretion in this matter, I would proceed to the merits of this case.

Accordingly, I respectfully dissent.