**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

**Patrick J. Fisher, Jr.**                                                                    **Elisabeth A.Shumaker**
**Clerk**                                                                                          **Chief Deputy Clerk**

February 10, 1997

**TO:**   All recipients of the captioned opinion

**RE:**   96-1469 and 96-1475, U.S. v. McVeigh
96-1484, Kight v. Matsch
February 4, 1997

Please be advised of the following corrections to the captioned decision:

In footnote 3 on page 13, in the parenthetical for the Burks case, "witnesses'" should read "witness's." In the first full paragraph on page 21, "principal" should read "principle."

Please make the appropriate corrections.

Very truly yours,

Patrick Fisher, Clerk

Susie Tidwell
Deputy Clerk

UNITED STATES COURT OF APPEALS

**Filed 2/4/97**

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

TIMOTHY JAMES MCVEIGH;
TERRY LYNN NICHOLS,

Defendants-Appellees.

------------------------------------

NATIONAL VICTIMS CENTER;
MOTHERS AGAINST DRUNK
DRIVING; THE NATIONAL
VICTIMS' CONSTITUTIONAL
AMENDMENT NETWORK;
JUSTICE FOR SURVIVING
VICTIMS, INC.; CONCERNS OF
POLICE SURVIVORS, INC.;
CITIZENS FOR LAW AND ORDER,
INC; CRIMINAL JUSTICE LEGAL
FOUNDATION,

Amici Curiae.

No. 96-1469

_____

UNITED STATES OF AMERICA,

　　　　Plaintiff,

v.                                                            No. 96-1475

TIMOTHY JAMES MCVEIGH;
TERRY LYNN NICHOLS,

　　　　Defendants-Appellees.

------------------------------------

MARSHA KIGHT; H. TOM KIGHT;
JEAN BELL; EVA MAUREEN
BLOOMER; MARVIN BUCKNER;
MARTIN CASH; MARGIE CASH;
JANNIE M. COVERDALE;
CHRISTOPHER C. GREGAN;
SAUNDRA K. CREGAN; DAWN
DEARMON; JODY DEARMON;
DORRIS DELMAN; ERNEST
DELMAN; LESLIE DOWNEY; MIKE
DOWNEY; CECIL ELLIOTT; SONIA
DIANE LEONARD; CATHY
MCCASKELL; C. NEIL
MCCASKELL; AMY L. PETTY; ROY
SELLS; TERRI SHAW; PARTRICIA
SMILEY; ENETRICE SMILEY; TINA
TOMLIN RICHARD TOMLIN; KIM
TOMLIN; JUDY WALKER;
NATIONAL ORGANIZATION FOR
VICTIM ASSISTANCE; JULIE ANN
ADAMS; JANET K. BECK; MARY
SUZANNE BRITTEN; JOHN HENRY
CARLILE; GLORIA CHIPMAN;
SANDRA KAY COLE; JOHN COLE;

SHERRI A. COLEMAN; TERESA C. COOK; CATHY JEAN COULTER; KEITH T. COVERDALE; LAQUITA COWAN; HERBERT RANDY CREAGER; RITA CREWS; VIRGINIA DILLON; ELLA GAIL DRISKILL; YLITA R. EDD; CODY FARMER; VIRGINIA FREDMAN; JOHN J. GALE; HELENA ANNETTE GARRETT; JANE C. GRAHAM; TAMARA GREINER; JANET C. GWYNN; PATRICIA PATTI HALL; LADONNA J. HARRIS; GINA HERNANDEZ; PERLA BUHAY HOWARD; CHEYRE ROGENE HUGHES; GERMAINE A. JOHNSTON; DORIS JONES; VERLYN Z. LAWTON; FRANCES LEONARD; CALVIN MOSER; VIRGINIA G. MOSER; BARBARA ANN MURCHISON; MARIOIN A. RAGLAND; RITA H. RAINS; BEVERLY ANN RANKIN; DORA REYES; MICHAEL REYES; FLORENCE ROGERS; GUY GERARD RUBSAMEN; MICHAEL J. SCHUMAN; GLENN SEIDL; EDYE SMITH; PHILIP THOMPSON; SHELLY RENEE THOMPSON; GLORIA TITSWORTH; WILLIAM TITSWORTH; JACQUE LEA WALKER; JANET EHRLICH WALKER; DONNA WEAVER; WANDA R. WEBSTER; SUZANNE WELCH; E.E. "BUD" WELCH; RICHARD WILLIAMS,

Movants-Appellants.

-3-

------------------------------------

NATIONAL VICTIMS CENTER;
MOTHERS AGAINST DRUNK
DRIVING; THE NATIONAL
VICTIMS' CONSTITUTIONAL
AMENDMENT NETWORK;
JUSTICE FOR SURVIVING
VICTIMS, INC.; CONCERNS OF
POLICE SURVIVORS, INC.;
CITIZENS FOR LAW AND ORDER,
INC.; CRIMINAL JUSTICE LEGAL
FOUNDATION,

Amici Curiae.

------------------------------------

MARSHA KIGHT; H. TOM KIGHT;
JEAN BELL; EVA MAUREEN
BLOOMER; MARVIN BUCKNER;
MARTIN CASH; MARGIE CASH;
JANNIE M. COVERDALE;
CHRISTOPHER C. CREGAN;
SAUNDRA K. CREGAN; JODY
DEARMON; DORRIS DELMAN;
ERNEST DELMAN; LESLIE
DOWNEY; MIKE DOWNEY; CECIL
ELLIOT; SONIA DIANE LEONARD;
CATHY MCCASKELL; C. NEIL
MCCASKELL; AMY L. PETTY; ROY
SELLS; TERRI SHAW; PATRICIA
SMILEY; ENETRICE SMILEY;
RICHARD TOMLIN; KIM TOMLIN;
NATIONAL ORGANIZATION FOR
VICTIM ASSISTANCE; JULIE ANN
ADAMS; JANET K. BECK; MARY
SUZANNE BRITTEN; JOHN HENRY
CARLILE; GLORIA CHIPMAN;

No. 96-1484

SANDRA KAY COLE; JOHN COLE; SHERRI A. COLEMAN; TERESA C. COOK; CATHY JEAN COULTER; KEITH T. COVERDALE; LAQUITA COWAN; HERBERT RANDY CREAGER; RITA CREWS; VIRGINIA DILLON; ELLA GAIL DRISKILL; YLITA R. EDD; CODY FARMER; VIRGINIA FREDMAN; JOHN J. GALE; HELENA ANNETTE GARRETT; JANE C. GRAHAM; TAMARA GREINER; JANET C. GWYNN; PATRICIA "PATTI" HALL; LADONNA J. HARRIS; GINA HERNANDEZ; PERLA BUHAY HOWARD; CHEYRE ROGENE HUGHES; GERMAINE A. JOHNSTON; DORIS JONES; VERLYN Z. LAWTON; FRANCES LEONARD; CALVIN MOSER; VIRGINIA G. MOSER; BARBARA ANN MURCHISON; MARION A. RAGLAND; RITA H. RAINS; BEVERLY ANN RANKIN; DORA REYES; MICHAEL REYES; FLORENCE ROGERS; GUY GERARD RUBSAMEN; MICHAEL J. SCHUMAN; GLENN SEIDL; EDYE SMITH; PHILLIP THOMPSON; SHELLY RENEE THOMPSON; GLORIA TITSWORTH; WILLIAM TITSWORTH; JACQUE LEA WALKER; JANET EHRLICH WALKER; DONNA WEAVER; DAWN LEINEN DEARMON; DONNA HAWTHORNE; WANDA R. WEBSTER; SUZANNE WELCH; PAUL HOWELL; SHARON LITTLEJOHN; E.E. "BUD" WELCH;

-5-

RICHARD WILLIAMS; STEVE SMITH; AMBER TINA TOMLIN; JUDY WALKER,

        Petitioners,

v.

HONORABLE RICHARD P. MATSCH, District Judge,

        Respondent.

-----------------------------------

UNITED STATES OF AMERICA; TIMOTHY JAMES MCVEIGH; TERRY LYNN NICHOLS;

        Real Parties In Interest,

NATIONAL VICTIMS CENTER; MOTHERS AGAINST DRUNK DRIVING; THE NATIONAL VICTIMS' CONSTITUTIONAL AMENDMENT NETWORK; JUSTICE FOR SURVIVING VICTIMS, INC.; CONCERNS OF POLICE SURVIVORS, INC.; CITIZENS FOR LAW AND ORDER, INC.; CRIMINAL JUSTICE LEGAL FOUNDATION,

        Amici Curiae.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 96-CR-68-M)

---

Submitted on the briefs:

Merrick Garland, Principal Associate Deputy Attorney General, Joseph H. Hartzler, Special Attorney to the U.S. Attorney General, Sean Connelly, Special Attorney to the U.S. Attorney General, Vicki Zemp Behenna, Special Attorney to the U.S. Attorney General, Denver, Colorado, for Plaintiff-Appellant United States of America.

Professor Paul G. Cassell (Counsel of Record), Salt Lake City, Utah, Sean Kendall, (Local Counsel), Boulder, Colorado, Gary B. Born, Robert F. Hoyt, Arnon D. Siegel, Karan K. Bhatia of Wilmer, Cutler & Pickering, Washington, D.C., for Victims of the Oklahoma City Bombing and NOVA.

Michael E. Tigar, Ronald G. Woods, N. Reid Neureiter, Adam Thurschwell, and Jane B. Tigar, Denver, Colorado, for Defendant-Appellee Terry Lynn Nichols.

Stephen Jones, Robert Nigh, Jr. of Jones, Wyatt & Roberts, Enid, Oklahoma, Richard H. Burr, III, Houston, Texas, and Jeralyn E. Merritt, Denver, Colorado, for Defendant-Appellee Timothy James McVeigh.

Kent S. Scheidegger, Charles L. Hobson, Criminal Justice Legal Foundation, Sacramento, California, for Amicus Curiae Criminal Justice Legal Foundation.

Arnold I. Burns, Peter J.W. Sherwin of Proskauer Rose Goetz & Mendelsohn LLP, New York, New York, for Amici Curiae.

---

Before PORFILIO, KELLY, and BRISCOE, Circuit Judges.

---

PER CURIAM.

-7-

In these consolidated proceedings, we address an important question of criminal procedure involving significant interests of the defendants, prosecution, crime victims, and public, which has thus far received virtually no judicial attention: whether a pretrial order prohibiting victim-impact witnesses from attending the criminal prosecution in which they are slated to testify is subject to review at the urging of either the government or the nonparty witnesses themselves. Upon careful consideration of the various constitutional and statutory ramifications, we conclude as a general matter, and hold in this particular case, that it is not, though we do not categorically rule out the possibility of mandamus relief for the government in the event of a patently unauthorized and pernicious use of the sequestration power.

In early pretrial hearings, the district court invoked, originally on its own initiative and, thereafter, at the insistence of defense counsel, the traditional rule authorizing the sequestration of witnesses. See Fed. R. Evid. 615 ("At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion."). Later, in response to an extensively briefed and formally argued request for reconsideration, the district court reaffirmed its adherence to Rule 615, prompting the current proceedings for review.

The government and the excluded witnesses filed separate appeals, Nos. 96-1469 and 96-1475, respectively, which defendants moved to dismiss on procedural grounds. The excluded witnesses then filed a petition for a writ of mandamus, No. 96-1484, and the government added an informal request for mandamus consideration, both seeking to secure an alternative avenue of review in the event their appeals were deemed defective. This court consolidated all of the proceedings and granted expedited review. The briefs of the parties and amici[1] have now been filed, putting the case at issue.[2] On de novo consideration of the fundamental threshold questions raised by defendants' motions, see Wilson v. Glenwood Intermountain Properties, Inc., 98 F.3d 590, 593 (10th Cir. 1996) (standing); Comanche Indian Tribe v. Hovis, 53 F.3d 298, 302 (10th Cir.) (jurisdiction), cert. denied, 116 S. Ct. 306 (1995), we dismiss the government's appeal on jurisdictional grounds, deny as inappropriate its request for mandamus review, and dismiss the excluded witnesses' appeal and mandamus petition for lack of standing.

---

[1]    We grant motions filed by The Criminal Justice Legal Foundation and The National Victims Center, Mothers Against Drunk Driving, The National Victims' Constitutional Amendment Network, Justice for Surviving Victims, Inc., Concerns of Police Survivors, Inc., and Citizens for Law and Order, Inc., to submit amicus curiae briefs in support of the appellants.

[2]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these proceedings. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cases are therefore ordered submitted on the briefs.

# I

The government's right to appeal in criminal cases is subject to unique

limitations.

> Recently, in United States v. Carrillo-Bernal, 58 F.3d 1490 (10th Cir. 1995), we surveyed in detail the historical evolution of the government's right to appeal in criminal cases.  Id. at 1494-97. . . . Before the turn of this century, government appeals in criminal cases were considered verboten.  Since then, Congress has progressively loosened the government's ability to receive appellate review of unfavorable district court decisions in criminal matters.  Id. at 1494-95.  However, two general rules have survived this historical evolution:  the government may only initiate criminal appeals based on specific statutory authority; and there is a presumption against government criminal appeals.  Id.

United States v. Roberts, 88 F.3d 872, 883 (10th Cir. 1996).  Because the general

jurisdictional statute governing the federal appellate courts, 28 U.S.C. § 1291,

does not supply the requisite authorization for the government's appeal, we look

to the Criminal Appeals Act, 18 U.S.C. § 3731, to resolve the jurisdictional

question raised here.  See Di Bella v. United States, 369 U.S. 121, 130 (1962);

see, e.g., United States v. Sasser, 971 F.2d 470, 473 (10th Cir. 1992); United

States v. Hines, 419 F.2d 173, 174 (10th Cir. 1969); United States v. Cote, 51

F.3d 178, 180 (9th Cir. 1995); United States v. Martinez, 763 F.2d 1297, 1307-08

(11th Cir. 1985).  We approach this inquiry mindful of the Supreme Court's

"insist[ence] that Congress speak with a clear voice when extending to the

Executive a right to expand criminal proceedings [by appeal]." Arizona v.

Manypenny, 451 U.S. 232, 247 (1981).

## A

Since its last substantive amendment in 1984, § 3731 has expressly

authorized government appeals:

> [1] from a decision, judgment, or order . . . dismissing an indictment or information or granting a new trial after a verdict or judgment, as to any one or more counts, except . . . where the double jeopardy clause . . . prohibits further prosecution[;]

> [2] from a decision or order . . . suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purposes of delay and that the evidence is a substantial proof of a fact material in the proceeding[; and]

> [3] from a decision or order . . . granting the release of a person charged with or convicted of an offense, or denying a motion for revocation of, or modification of the conditions of, a decision or order granting release.

These conditions permitting appeal have been "carefully circumscribed by

Congress out of a desire (among other reasons) to safeguard individuals from the

special hazards inherent in prolonged litigation with the sovereign."

Carrillo-Bernal, 58 F.2d at 1497; see also United States v. Martinez, 681 F.2d

1248, 1251 (10th Cir. 1982)("The right to appeal is strictly circumscribed by

[§ 3731]."). Accordingly, "[t]he statute plainly limits appeals by the United

-11-

States to [the three] specified categories of district court orders." United States v. Patterson, 882 F.2d 595, 598 (1st Cir. 1989) (quotation omitted); see Di Bella, 369 U.S. at 130 (right of appeal under § 3731 "is confined to narrowly defined situations"); United States v. Mavrokordatos, 933 F.2d 843, 846 (10th Cir. 1991) ("The statute was intended to make appeals possible under the stated circumstances.").

Nothing in § 3731 remotely suggests that the government may appeal a witness sequestration order. The circuit courts have repeatedly dismissed government appeals taken from similar preliminary rulings which, neither ordering nor practically effecting the dismissal of charges, exclusion of evidence, or release of the defendant, fell outside the categories specified in § 3731.[3] See,

---

[3]    We say "nor practically effecting" because § 3731 can apply to rulings which, though nominally outside the scope of the statute, have the practical effect of orders clearly covered. See United States v. Zabawa, 39 F.3d 279, 283 (10th Cir. 1994); United States v. Drogoul, 1 F.3d 1546, 1551 (11th Cir. 1993); United States v. Kane, 646 F.2d 4, 7 (1st Cir. 1981) (collecting cases). Specifically, orders directing the government to take action and specifically providing for the exclusion of related evidence in the event of noncompliance have been deemed "conditional suppression" orders and thereby brought within a liberal construction of the statute. See, e.g., United States v. Horwitz, 622 F.2d 1101, 1104-05 (2d Cir. 1980) (order requiring government to immunize defense witness or lose testimony of immunized prosecution witnesses); United States v. Battisti, 486 F.2d 961, 965-67 (6th Cir. 1973) (discovery order stating noncompliance "will result in the exclusion of the testimony of the witness or witnesses to which [it] pertains").

That said, we agree with the thoughtful analysis of such cases in Kane, 646

(continued...)

e.g, Roberts, 88 F.3d at 882-84 (order deferring ruling on exclusion of evidence until proffer at trial); United States v. Dean, 989 F.2d 1205, 1210-11 (D.C. Cir. 1993)(same); United States v. Camisa, 969 F.2d 1428, 1429-30 (2d Cir. 1992)(order denying motion to disqualify defense counsel); United States v. White, 743 F.2d 488, 493 (7th Cir. 1984)(same); United States v. Booth, 669 F.2d 1231, 1240 (9th Cir. 1981)(order granting admission of evidence); United States v. Margiotta, 662 F.2d 131, 137-41 (2d Cir. 1981)(order approving disputed jury instruction); Kane, 646 F.2d at 7-9 (order compelling discovery); United States v. Martin, 611 F.2d 260, 261 (9th Cir. 1979)(order permitting withdrawal of guilty

---

[3](...continued)
F.2d at 8, which dismissed an appeal from a discovery order citing "a critical distinction" pertinent here as well: "The district court has not stated that it will exclude evidence if the government fails to comply. Rather than being a conditional order of exclusion, . . . the order in question is an unconditional direction which may be enforced by any of a variety of sanctions, only one of which is exclusion of evidence." The same is true of the sequestration order issued in this case. See United States v. Sepulveda, 15 F.3d 1161, 1177 (1st Cir. 1993) (upon breach of sequestration order, "the need for a sanction, and the nature of one, if imposable, are matters committed to the trial court's sound discretion."); see also Burks v. Oklahoma Publ'g Co., 81 F.3d 975, 980 (10th Cir.) ("When a witness violates a sequestration order, it is within the district court's discretion to admit or exclude the witness's testimony."), cert. denied, 117 S. Ct. 302 (1996). Kane notes the additional point, also applicable here, "that the government has not signaled whether it intends to comply with the district court's order or not. . . . To show the court's order has the 'practical effect' of excluding evidence, we think the government must go further and commit itself to a course of action which makes exclusion, practically speaking, inevitable." 646 F.2d at 8.

plea).  We likewise hold that § 3731 does not provide the necessary authorization

for the government's appeal in this case.

**B**

Perhaps anticipating this conclusion, the government has essentially

ignored § 3731 and, instead, relied exclusively on a judicially recognized

exception to the foregoing limitations on government appeals.  In Carroll v.

United States, 354 U.S. 394, 403 (1957), the Supreme Court acknowledged in the

criminal context an interlocutory-appeal rule analogous to the Cohen

collateral-order doctrine[4] familiar in civil cases:  "[C]ertain orders relating to a

criminal case may be found to possess sufficient independence from the main

course of the prosecution to warrant treatment as plenary orders, and thus be

appealable on the authority of 28 U.S.C. § 1291 without regard to the limitations

of 18 U.S.C. § 3731."  The Court cautioned, however, that "[t]he instances in

criminal cases are very few."  Id.; see United States v. Denson, 588 F.2d 1112,

1126-27 (5th Cir. 1979) (Carroll "emphasized the rareness of such orders").

Notwithstanding that admonition, and despite the absence of any authority

applying Carroll to a witness-sequestration order, the government maintains the

independent-proceeding exception supports its appeal here.

---

[4]      The collateral-order doctrine originates from Cohen v. Beneficial
Indus. Loan Corp, 337 U.S. 541 (1949).

-14-

The government contends the sequestration order (1) "conclusively [determined] that victim-witnesses are not entitled to attend court proceedings," (2) impacts an "important right" that "is 'completely separate from the merits' of whether defendants are guilty and how they should be punished," and (3) "would be 'effectively unreviewable' after [trial]," and, therefore, that the "Cohen inquiry is easily satisfied here." Brief of Plaintiff-Appellant, at 9-11; Reply Brief of Plaintiff-Appellant, at 3. The conclusion of this argument bespeaks its flaw. Given the severe limitations on the government's right of appeal from final criminal judgments--including the complete prohibition thereon following a jury acquittal--pretrial criminal rulings would as a routine matter arguably, if not "easily," satisfy the Cohen criteria. However, the pertinent case law does not countenance the evisceration of § 3731 by any such wholesale departure from the traditional presumption against government interlocutory appeals in criminal cases. Indeed, the Supreme Court has specifically noted that the considerations disfavoring such appeals are "made no less compelling . . . by the fact that the Government has no later right to appeal." Di Bella, 369 U.S. at 130.

The basic problem with the government's Cohen argument arises from the government's consistent failure throughout this appeal to come to grips with the fundamental principle that for it to appeal in the criminal context, authorization under § 3731 is an independent requirement in addition to the finality demanded

-15-

by § 1291. Obviously, it is only the latter condition that traditionally has been excused by the civil <u>Cohen</u> collateral-order doctrine. Thus, when the government seeks review in a criminal case, concerns unaddressed by <u>Cohen</u> come into play. The Second Circuit has acknowledged this same crucial point in rejecting the government's invocation of <u>Carroll</u> and <u>Cohen</u> in support of an appeal unauthorized by § 3731:

> The same considerations that have led the courts to avoid construing § 3731 broadly as authorizing appeals from new-trial orders[5] lead us to eschew expansion of the traditional scope of § 1291 to allow the present appeal [under <u>Carroll</u> and <u>Cohen</u>]. . . . This historic policy disfavoring government appeals in criminal cases, which has repeatedly been reaffirmed by the Court concurrently with its recognition of Congress's increasing allowance of interlocutory appeals, has a prudential basis, 'over and above the constitutional protection against double jeopardy,' <u>Di Bella</u>[, 369 U.S. at 130.] The principal prudential bases are the avoidance of undue delay, <u>see</u> <u>Carroll</u>[, 354 U.S. at 415] . . . , and the avoidance of harassment, <u>see</u> <u>Arizona v. Manypenny</u>, [451 U.S. at 246]. . . . Finding no express authority in § 1291 authorizing government appeals in criminal cases, and viewing the new trial order as a nondispositive part of the main stream of the prosecution, we decline to construe § 1291, or the <u>Cohen-Carroll</u> exception, so broadly as to give us jurisdiction in the present case.

<u>United States v. Sam Goody, Inc.</u>, 675 F.2d 17, 23-24 (2d Cir. 1982). Similarly, when the First Circuit recently relied on <u>Carroll</u> and <u>Cohen</u> to hear a government appeal from a post-judgment order imposing monetary sanctions for prosecutorial

---

5       Congress subsequently amended § 3731 specifically to authorize appeal from orders "granting a new trial after verdict or judgment" when otherwise constitutionally permissible.

-16-

misconduct, the court emphasized that its holding had to be "a narrow one" because of precisely the same point:

> Rather than importing the collateral order doctrine lock, stock, and barrel into our criminal jurisprudence, we hold only that when, as now, the conditions of the collateral order doctrine are satisfied, and the prudential concerns that traditionally militate against allowing the government to appeal in a criminal case favor, or are at least neutral in respect to, the availability of a government appeal, then section 1291 affords a vehicle through which the government may seek appellate review in a criminal case.

United States v. Horn, 29 F.3d 754, 769 (1st Cir. 1994) (footnote omitted). Significantly, the Horn court found the additional "prudential concerns" regarding government criminal appeals satisfied for unique reasons completely inapposite here: "the determination of the defendants' guilt has been made, sentence has been imposed, the attempted appeal is not interlocutory in any sense, and no prospect of piecemeal litigation endures." Id. at 768-69.

We need not now decide upon any comprehensive, sagacious formulation for resolving the validity of all attempts by the government to appeal from interlocutory orders falling outside the compass of § 3731. The Supreme Court's initial heuristic prescription, specifying "orders . . . found to possess sufficient independence from the main course of the prosecution to warrant treatment as plenary orders," Carroll, 354 U.S. at 403, fully suffices for present purposes. While legislative expansion of § 3731 has superseded the particular holdings of the seminal Supreme Court decisions establishing and implementing this

-17-

prescription, see id. at 403-04 (dismissing appeal of suppression order and discussing limited circumstances when order returning seized property might be appealable); Di Bella, 369 U.S. at 130-32 (same), the analysis informing those decisions still holds counsel for us today. Thus, we draw a keen sense of the strict "independence" required for application of the independent-proceeding rule from Di Bella's pronouncement that even such a collateral criminal matter as a proceeding "solely for return of property" can be regarded as independent only if it "is in no way tied to a criminal prosecution *in esse*." Id. at 131-32; see also Hines, 419 F.2d at 175 (noting "narrow ground" for appeal carved out by Carroll and Di Bella, and paraphrasing Supreme Court's "unequivocal language" therein as requiring a matter "totally segregated from" and "[not] even remotely connected [to]" a "pending criminal prosecution").

The district court's sequestration order clearly is not independent from the ongoing criminal prosecution out of which the government's appeal arises. Indeed, the stated purpose of the order, consistent with the recognized policy underlying Rule 615 generally,[6] is to preserve the integrity of that very proceeding by eliminating a potential source of impermissible influence on proposed

---

[6]    Carroll cautions that "[a]ppeal rights cannot depend on the facts of a particular case." 354 U.S. at 405. Thus, we must consider the appealability of sequestration orders as a class, not the distinctive circumstances of this case. See Van Cauwenberghe v. Biard, 486 U.S. 517, 529 (1988).

testimonial evidence.  The fact that the victim-impact evidence involved here would relate only to sentencing matters does not alter our analysis.  Far from being collateral to the main course of the prosecution, "[t]he sentencing process is the inevitable culmination of a successful prosecution; it is an integral aspect of a conviction."  Denson, 588 F.2d at 1126; see United States v. Patterson, 882 F.2d 595, 599 (1st Cir. 1989); United States v. Hundley, 858 F.2d 58, 65 (2d Cir. 1988).

Accordingly, we hold that neither § 3731 nor the independent-proceeding exception thereto apply to the government's appeal.  We therefore dismiss the appeal for lack of the requisite jurisdictional authorization, and turn to the government's alternative request for a writ of mandamus.

## C

Ordinarily, the unavailability of appeal favors mandamus consideration. But the lack of appellate jurisdiction here is not a mere procedural contingency fortuitously precluding review; on the contrary, the government's right of appeal in this context has been "carefully circumscribed by Congress" to safeguard important interests.  Carrillo-Bernal, 58 F.3d at 1497.  The federal courts of appeal "are courts of limited jurisdiction . . . empowered to hear only those cases . . . entrusted to them . . . by Congress[,]. . . [which] possesses plenary power to confer or withhold appellate jurisdiction."  Henry v. Office of Thrift Supervision,

-19-

43 F.3d 507, 511 (10th Cir. 1994). "Were we to accede to the government's request [for mandamus relief], we would be expanding the government's right to bring interlocutory criminal appeals beyond the terms of [§ 3731]. We do not believe mandamus provides the appropriate avenue for such expansion." Roberts, 88 F.3d at 884; see Will v. United States, 389 U.S. 90, 97 (1967) ("Mandamus . . . may never be employed as a substitute for appeal in derogation of the[] clear policies [embodied by the limitations in § 3731].”); Margiotta, 662 F.2d at 134 n.8 ("Mandamus is not to be employed to circumvent the limitations of the Criminal Appeals Act.").

While mandamus may not be used to circumvent the policies effectuated by the restrictive provisions of § 3731, "[t]his is not to say that mandamus may never be used to review procedural orders in criminal cases." Will, 389 U.S. at 97. Thus, as indicated at the outset of this opinion, we do not categorically preclude the use of mandamus to review any and all criminal rulings, however egregious, unauthorized, and prejudicial, which might fall outside the scope of § 3731. Cf. 389 U.S. at 97-98 (citing as proper use of mandamus instance in which district court had "overreached its judicial power" in denying government "rightful fruits of a valid conviction"); United States v. Dooling, 406 F.2d 192, 198-99 (2d Cir. 1969) (finding "compelling need for the issuance of mandamus" in order to prevent "gross disruption in the administration of criminal justice" caused by

-20-

"highly improper and undesirable" action by district court). However, "[w]e are unpersuaded this case presents the appropriate vehicle to [permit such review]." Roberts, 88 F.3d at 883; cf. Margiotta, 662 F.2d at 134 n.8.

We acknowledge that our analysis has resulted in completely foreclosing review of the government's challenge to the sequestration order. Though it may perhaps be seen as overly technical and unduly severe by those focussed only on this particular controversy, our judicial restraint is ultimately guided and informed by a very broad principle--the constitutional distribution of power between the legislative and judicial branches of our government. As the Supreme Court took pains to explain in Carroll:

> Many interlocutory decisions of a trial court may be of grave importance to a litigant, yet are not amenable to appeal at the time entered, and some are never satisfactorily reviewable. In particular is this true of the Government in a criminal case . . . .
>
> If there is serious need for appeals by the Government from [sequestration] orders, or unfairness to the interests of effective criminal law enforcement in the distinctions we have referred to, it is the function of the Congress to decide whether to initiate a departure from the historical pattern of restricted appellate jurisdiction in criminal cases. We must decide the case on the statutes that exist today, in the light of what has been the development of the jurisdiction. It is only through legislative resolution, furthermore, that peripheral questions regarding the conduct of government appeals in this situation can be regulated.

354 U.S. at 406-08 (footnotes omitted).

## II

Defendants have raised numerous challenges to the proceedings for review brought by the sequestered victim-impact witnesses themselves. However, we find it necessary to address only the issue of standing. As "an essential and unchanging part of the case-or-controversy requirement of Article III," Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), constitutional standing "is a threshold issue in every case before a federal court, determining the power of the court to entertain the suit." Boyle v. Anderson, 68 F.3d 1093, 1100 (8th Cir. 1995), cert. denied, 116 S. Ct. 1266 (1996); see Board of Natural Resources v. Brown, 992 F.2d 937, 945 (9th Cir. 1993). Further, Article III standing is a jurisdictional requisite "at every stage of the proceeding." Citizens Concerned for Separation of Church & State v. City & County of Denver, 628 F.2d 1289, 1301 (10th Cir. 1980); see Board of County Comm'rs v. W.H.I., Inc., 992 F.2d 1061, 1063 (10th Cir. 1993); see also Skrzypczak v. Kauger, 92 F.3d 1050, 1052 (10th Cir. 1996), petition for cert. filed, 65 U.S.L.W. 3444 (Dec. 13, 1996)(No. 96-953). Accordingly, the excluded witnesses' failure to satisfy constitutional standing requirements would preclude our consideration of both their appeal and their petition for mandamus relief.[7]

---

[7]     We do *not* hold that the lack of what is often called "appellate standing" necessarily precludes mandamus review. Standing encompasses "constitutional considerations related to the 'case or controversy' limitation of Article III and also prudential concerns 'that, apart from Art. III's minimum

(continued...)

-22-

Article III imposes three fundamental requirements for standing in federal court:

> First, the [complainant] must have suffered an injury in fact--an invasion of a legally protected interest which is concrete and particularized and actual or imminent. Second, a causal connection must exist between the injury and the conduct complained of; the injury must be fairly traceable to the challenged action. Third, it must be likely that the injury will be redressed by a favorable decision.

Committee to Save the Rio Hondo v. Lucero, 102 F.2d 445, 1996 WL 700138, at *2 (10th Cir. Dec. 6, 1996) (quotations and citations omitted). Our disposition turns on the first.

Legally protected interests derive from various sources, including constitutional guarantees, see, e.g., Journal Publ'g Co., 801 F.2d at 1235,

---

[7](...continued) requirements, serve to limit the role of the courts in resolving public disputes.'" Kansas Health Care Ass'n v. Kansas Dep't of Social & Rehabilitation Servs., 958 F.2d 1018, 1021 (10th Cir. 1992) (quoting Warth v. Seldin, 422 U.S. 490, 498-500 (1975)). Article III authority is a prerequisite to judicial review, however sought. In contrast, a prudential concern, such as nonparty status, counseling uniquely or primarily against the propriety of appeal, need not bar a petition for mandamus review. See, e.g., Journal Publ'g Co. v. Mechem, 801 F.2d 1233, 1235-36 (10th Cir. 1986) (news organization had Article III standing to seek mandamus review of order barring press access, although, as nonparty, it could not challenge order by appeal); United States v. Schlette, 842 F.2d 1574, 1576 (9th Cir. 1988) (same); In re Washington Post Co., 807 F.2d 383, 388 & n.4 (4th Cir. 1986) (same). We emphasize that our standing analysis turns on constitutional considerations, not the excluded witnesses' nonparty status. Consequently, we need not treat separately the district court's denial of their motion to intervene.

statutory provisions, see, e.g., Wilson, 98 F.3d at 595, and common law rights, see, e.g., W.H.I., Inc., 992 F.2d at 1064 (enjoyment of property rights). See also, e.g., San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1126-30 (9th Cir. 1996) (discussing constitutional, statutory, and common law economic interests supporting standing). The victim-impact witnesses rely on two of these sources for their asserted interest in attending the criminal trial from which they have been excluded by the sequestration order. First, they cite the Victims' Rights and Restitution Act (Victims' Rights Act) for the particularized right of crime victims "to be present at all public court proceedings related to the offense." 42 U.S.C. § 10606(b)(4). Second, they argue more generally that the right of public access to criminal proceedings, recognized in Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980) (plurality), and Globe Newspaper Co. v. Superior Court, 457 U.S. 596 (1982), provides a constitutional basis for their claim of injury.

**A**

There are a number of problems with the excluded witnesses' reliance on the Victims' Rights Act.[8] The statute charily pledges only the "best efforts" of certain executive branch personnel to secure the rights listed. See § 10606(a) ("Officers and employees of . . . departments and agencies of the United States engaged in the detection, investigation, or prosecution of crime shall make their best efforts to see that victims of crime are accorded the rights described in subsection (b) of this section."). The district court judge, a judicial officer not bound in any way by this pledge, could not violate the Act. Indeed, the Act's prescriptions were satisfied once the government made its arguments against sequestration--before the district court even ruled.

Further, the specific right to attend criminal proceedings is expressly subject to the following qualification: "unless the court determines that testimony by the victim would be materially affected if the victim heard other testimony at trial." § 10606(b)(4). In essence, the statute acknowledges that the policies behind Rule 615 inherently limit the victim's right to attend criminal proceedings.

---

[8] In conjunction with the Victims' Rights Act, the excluded witnesses also refer generally to 42 U.S.C. § 10608, which provides for closed circuit televising of certain criminal proceedings. This statute does not materially impact our construction and application of § 10606, or our standing analysis generally.

-25-

Finally, and in any event, Congress explicitly instructed that the Act "does not create a cause of action or defense in favor of any person arising out of the failure to accord to a victim the rights enumerated in subsection (b)." § 10606(c). The excluded witnesses argue this provision relates only to independent enforcement actions and does not bar appeal or mandamus challenges within the criminal proceeding itself, but this facially uncompelling contention is undercut further by a decision of this court in an analogous standing context. In United States v. Kelley, 997 F.2d 806, 807-08 (10th Cir. 1993), we joined a line of authority holding that crime victims do not have standing under the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663, to appeal unfavorable restitution orders. Significantly, this case law rejects victims' arguments for standing under the VWPA because the history and plain language of the VWPA "do not indicate that Congress, either explicitly or implicitly, intended to provide a private cause of action to victims." Kelley, 997 F.2d at 808 (quoting United States v. Johnson, 983 F.2d 216, 221 (11th Cir. 1993)). A fortiori, the Victims' Rights Act, which explicitly denies any private cause of action, does not grant standing to seek review of orders relating to matters covered by the Act. See also

Hernandez-Avalos v. INS, 50 F.3d 842, 844, 848 (10th Cir.) (holding party lacked standing to invoke mandamus to enforce statutory directive in light of express prohibition on private right of action in statute), cert. denied, 116 S. Ct. 92 (1995).

**B**

Our analysis of the excluded witnesses' constitutional basis for standing rests on a fundamental distinction regarding the character and locus of the public right of access to criminal proceedings derived from the First Amendment by the Supreme Court in Richmond Newspapers and Globe Newspaper Co. The witnesses do not assert, nor could they, that an order precluding (only) intended witnesses from attending a criminal proceeding generally open to the public and the press violates the *public's* right of access. Rather, they posit a *personal* First Amendment right to attend the proceedings, violated despite the public's undisputed access. In our view, recognition of such an entitlement, arguably affording a constitutional basis for disruptive interlocutory review in every criminal prosecution at the behest of any disappointed would-be trial attendee, would entail an unprecedented expansion/transformation of the public trial-access

right unwarranted by the policies cited by the Supreme Court as the rationale for gleaning the right from the First Amendment.[9]

A broad survey of public trial-access case law, and review of the particular authorities relied on by the excluded witnesses here, confirm that pertinent constitutional proscriptions are implicated only when, through orders closing proceedings, sealing documents, gagging participants and/or restricting press coverage, a trial court has deprived the public at large direct or indirect access to the trial process. The witness-sequestration order entered in this case has no such effect; members of the public will attend the trial and the press will report on the proceedings to the public generally. We are not aware of any case in which an analogous order was held to implicate the constitutional right recognized in Richmond Newspapers and Globe Newspaper Co.

Just as important, this assessment of the case law is entirely consistent with the broad, structural interests prompting the Supreme Court to recognize the public trial-access right despite the lack of explicit textual support in the constitution. Such interests include: informing the public discussion of government affairs, assuring the public perception of fairness, promoting the community-therapeutic effect of criminal justice proceedings, providing a public

---

[9] We need not and do not address entirely distinct questions regarding the propriety and redress of trial exclusions implicating other constitutional values, such as equal protection or traditional free speech guarantees.

-28-

check on corrupt practices, intimidating potential perjurers, and generally enhancing the performance of all involved in the process.  See Globe Newspaper Co., 457 U.S. at 604-05; United States v. Criden, 675 F.2d 550, 556 (3d Cir. 1982) (summarizing "six societal interests" cited in Richmond Newspaper plurality and concurring opinions).  These interests necessitate--and are satisfied by--a publicly open trial, regardless of the personal attendance of any particular individual.[10]  Indeed, "[t]he value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed."  Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 508 (1984).

Accordingly, we hold that the excluded witnesses lack Article III standing to seek review of the sequestration order entered by the district court.  We therefore do not have jurisdiction to reach the merits of either their appeal or their mandamus petition.

---

[10]     We note that considerations personal to particular individuals may be quite relevant to the standing inquiry *once a public deprivation has been shown*. Given such a showing, the critical remaining obstacle to standing, i.e., the requirement that those challenging the deprivation suffered a cognizable individualized harm, see United States v. Hays, 115 S. Ct. 2431, 2435-36 (1995), and therefore are the "proper proponents" of the general public's rights, Singleton v. Wulff, 428 U.S. 106, 112 (1976), would appear to be easily satisfied by victims seeking to attend the criminal prosecution of those charged with causing their injury.

The government's appeal, No. 96-1469, is DISMISSED, and its request for alternative mandamus consideration is DENIED. The victims' appeal, No. 96-1475, and their mandamus petition, No. 96-1484, are DISMISSED.