NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0745n.06
Filed: August 24, 2005

04-2044

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| WALTER JOHN BATES, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

Before:  NORRIS and DAUGHTREY, Circuit Judges, and JORDAN,[*] District Judge.

PER CURIAM.  In this interlocutory appeal, the government challenges the district court's order excluding certain evidence regarding the defendant's financial condition and gambling habits in a prosecution for bank robbery.  We conclude that the district court's determination of inadmissibility under Federal Rule of Evidence 404(b) and its imposition of a unilateral stipulation limiting the government's proof were improper, and we therefore vacate the court's order and remand the case for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

Walter Bates, a detective sergeant with the Detroit Police Department, was indicted in November 2003 for conspiracy to commit bank robbery and 13 substantive counts of bank robbery,

---

[*]The Hon. R. Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

along with co-defendants Albert Bates, Walter Bates's brother, and Kevin Foster-Bey. Soon thereafter, Foster-Bey agreed to cooperate with investigators, telling them that prior to the robberies Walter Bates had told Foster-Bey that he had been suspended from his job for soliciting a prostitute, that he had large bills to pay, and that he needed Foster-Bey's help robbing banks to pay those debts. According to Foster-Bey, Bates subsequently masterminded a string of 15 bank robberies committed by the three defendants between July 30, 2002, and October 8, 2002. Eventually, Foster-Bey pleaded guilty to six counts of bank robbery and is expected to testify at Bates's trial.

Prior to trial, the prosecutor disclosed to Bates certain evidence concerning his economic troubles that the government intends to introduce, first, to establish that the defendant's motive to commit the robberies was his growing financial distress and, second, to corroborate Foster-Bey's testimony. That evidence shows that Bates was twice suspended without pay from his job with the police department, first from April 9 until May 16, 2002, and then from approximately April 19, 2004, forward. He was also suspended with pay from August 27 to October 9, 2002, but without the opportunity for overtime. His credit report showed 11 debts that had gone to collection in 2002 and 2003. The tax returns of Bates and his wife showed a decrease in total wages from $138,009 in 2001 to $110,894 in 2002 and a total taxable interest of $12 in 2002, indicating minimal funds in savings. During this same period, some 280 checks were returned from Mrs. Bates's checking account, producing fees totaling $8,384.50 for insufficient funds. Between June 2001 and June 2003, Bates made 288 visits to various casinos, placing bets totaling over $100,000, and in November 2002, the MGM Grand Casino charged off a total of $3,580 in Bates's unpaid gambling debts. Bates filed for Chapter 13 bankruptcy in February 2003, declaring $21,770.12 in delinquent

property taxes and $12,116.71 in total mortgage arrearage and fees. Finally, the government disclosed pawnshop records showing 59 transactions by Bates between 1999 and 2003, 27 of them in 2002.

Following this disclosure, Bates filed a motion in limine to exclude all evidence of other crimes, wrongs, or acts pursuant to Federal Rule of Evidence 404(b), specifically:

a. Evidence regarding the commission of other uncharged bank robberies;
b. Evidence concerning job suspensions, with or without pay;
c. Evidence concerning an alleged crime for which the defendant was acquitted;
d. Evidence concerning legal gambling, "excessive" spending, and filing for bankruptcy.
e. Other unspecified non-criminal activity of a personal nature which could cast the defendant in a negative light.

The government responded, contending that the evidence was admissible to prove Bates's financial motive for the robberies and to corroborate the testimony of Foster-Bey.

At a hearing on the motion in limine, the district court invoked Rule 404(b) as a basis for excluding a significant amount of the government's evidence, including proof of Bates's financial condition. The government then filed a motion for reconsideration, resulting in a second hearing. At that hearing, the court asked Bates whether he would stipulate to his dire financial condition. When Bates agreed, the district court granted the government's motion to reconsider in part. The court excluded much of the evidence as inadmissible under Federal Rule of Evidence 404(b), based on Bates's agreement to stipulate to severe financial distress during the period set forth in the indictment. In its later order, the district court noted that Bates had unilaterally agreed to stipulate that:

1.    He was in severe financial distress during the time period set forth in the indictment;

2. While he had been paying his bills on time in 2001, he was not paying his bills on [time] during the time period set forth in the indictment; and

3. At the times of the robberies alleged in the indictment he had a significant increase in outstanding debts.

The court held that the following evidence would be excluded:

1. Any evidence of defendant's specific past due bills, including bills to casinos and his mortgage payment;

2. Any evidence of dishonored checks written on defendant's wife's checking account;

3. Any evidence of the Bates' credit card debt and failure to make credit card payments;

4. Any evidence of defendant's legal gambling;

5. Any evidence of, or derived from, the Bates' February 4, 2003, Chapter 13 bankruptcy filing; and

6. Any evidence of the Bates' pawn of items except the pawn of specific items mentioned by Foster-Bey.

The court also held that witnesses were prohibited from referring to Bates's suspension and that, although the government could introduce summary evidence regarding Bates's financial condition, it could not introduce expert financial testimony on the subject. The order did not otherwise limit Foster-Bey's testimony. The government subsequently filed this interlocutory appeal. The defendant now challenges our jurisdiction to hear the appeal and argues that the district court's decision to exclude the evidence in question was not an abuse of discretion.

## **DISCUSSION**

As a threshold matter, Bates argues that the court should refuse to hear this interlocutory appeal because the United States Attorney failed to certify the appeal as required by the jurisdictional statute, 18 U.S.C. § 3731. That statutory provision permits the government to appeal a decision or order of a district court suppressing or excluding evidence if "the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the

evidence is a substantial proof of a fact material in the proceeding." The government's notice of appeal was accompanied by such a certification. However, it was signed by Assistant U.S. Attorney Patricia Gaedeke, chief of the district's appellate division, on the signature line provided for the U.S. Attorney. After Bates objected to the validity of the assistant's signature, the government resubmitted the certification that same afternoon with the signature of U.S. Attorney Craig Morford, who had taken office that day. Bates claims that interlocutory appeal is unavailable because the government failed to comply with the requirements of Section 3731 when it submitted the U.S. Attorney's certification *after* it had filed the appeal.

The certification requirement in Section 3731 is intended to ensure conscientious scrutiny of government appeals by the responsible prosecuting official. *See United States v. Smith*, 263 F.3d 571, 577 (6th Cir. 2001). The purpose of the requirement is defeated when the government files a certification after it initiates the appeal, avoiding pre-appeal scrutiny and reducing the requirement to meaningless formality. *See id.* (quoting *United States v. Hanks*, 24 F.3d 1235, 1239 (10th Cir. 1994)). U.S. Attorney Morford's certification, produced several days after the government filed its appeal, did not comply with the statute and, therefore, was insufficient to cure the defect in the initial certification automatically.

A delayed filing of a certificate under Section 3731 does not divest an appellate court of its jurisdiction, however. *See Smith*, 263 F.3d at 578. The failure to file a timely certificate is merely an irregularity in perfecting an appeal. We have the discretion, in spite of the defect, to hear the appeal. *See* FED. R. APP. P. 3(a), *Smith*, 263 F.3d at 578. In exercising our discretion, we may consider a variety of factors, including when the certificate was filed, the reason for the delay,

whether the government did in fact engage in a conscientious pre-appeal analysis, whether the government acknowledges that the requirement should be taken seriously, any delay or prejudice to the defendant, the importance of the legal questions, and the interests of justice. *See Smith*, 263 F.3d at 578. While no one factor is controlling, a circuit court is unlikely to dismiss an appeal unless the defendant can show actual substantial prejudice. *See id.* (quoting *Hanks*, 24 F.3d at 1239).

In the case before the court, the government has offered a reasonable explanation for the delay, and Bates has offered no evidence of actual prejudice. The government contends that Assistant U.S. Attorney Gaedeke had authority to sign the certificate as a representative of the U.S. Attorney. Although this circuit has never recognized a U.S. Attorney's ability to delegate his or her duty to certify appeals under Section 3731, others have. *See e.g.*, *United States v. Wallace*, 213 F.3d 1216, 1218 (9th Cir. 2000); *United States v. Smith*, 532 F.2d 158, 160 (10th Cir. 1976); *United States v. Wolk*, 466 F.2d 1143, 1146 n.2 (8th Cir. 1972). Nevertheless, we need not adopt such a rule at this time, because, in the exercise of our discretion, we are satisfied that the government acted diligently in having the U.S. Attorney review and certify the appeal the same day that the issue was raised and, significantly, within the time limit set forth for filing the appeal. *See* FED. R. APP. P. 4(b). In addition, Bates has produced no evidence that he was prejudiced by the government's dely. We wish to emphasize the importance of conscientious review of government appeals by the U.S. Attorney prior to their filing. *See Smith*, 263 F.3d at 581. However, in light of the government's good-faith efforts to comply with the statute, we will address the merits of this appeal.

In that regard, the government contends that the trial court erred by excluding evidence of Bates's dire financial condition under Federal Rule of Evidence 404(b) and by imposing a unilateral

stipulation that limited the scope and depth of the prosecution's proof. We review a district court's decisions regarding the admissibility of evidence for abuse of discretion. *See Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir. 1999).

Under existing precedent, the government is entitled to prove its case free from a defendant's offer to stipulate the prosecution's evidence away. *See Old Chief v. United States*, 519 U.S. 172, 189-193 (1997). This rule rests on the proposition that a robust narrative is more effective than a dry explanation and that a noticeable gap in the prosecution's story will leave the jury wondering what is being kept from it. *See id.*

In this instance, we conclude that the government's proof is highly relevant both to Bates's financial motive and to Foster-Bey's familiarity with Bates, especially in view of the defendant's professional position as a police officer and, presumably, his otherwise good standing in the community. A person in such circumstances would normally be unlikely to mastermind more than a dozen bank robberies, putting a heavier-than-usual burden on the government to produce a motive for what might otherwise appear to be wholly uncharacteristic behavior. Legitimate evidence of motive, where that issue is pertinent, is recognized as admissible under the plain language of Rule 404(b), even where it consists of "other crimes, wrongs, or acts," and evidence of income patterns is recognized as relevant to demonstrate a motive of financial gain. *See United States v. Logan*, 250 F.3d 350, 369 (6th Cir. 2001). Moreover, although maintaining overdrawn bank accounts, filing petitions in bankruptcy, gambling in jurisdictions where it is not illegal, patronizing pawn shops, and the like are "acts," they are not intrinsically "bad acts" of the kind contemplated by Rule 404. Evidence of the defendant's financial woes and his efforts to ameliorate them through gambling may

be seen as prejudicial to the defendant, but in the circumstances of this case, it is not *unfairly*

prejudicial. The evidence also demonstrates that Foster-Bey was familiar with discrete details of

Bates's financial condition and thus may corroborate Foster-Bey's testimony. *See United States v.*

*Copeland*, 51 F.3d 611, 615 (6th Cir. 1995) (finding evidence admissible to corroborate testimony

when the matter corroborated was significant).

## <u>CONCLUSION</u>

In sum, we conclude that the district court abused its discretion in excluding the evidence

outlined in its order of August 23, 2004, as inadmissible under Rule 404(b). We therefore VACATE

that order and REMAND the case to the district court for trial.