IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

March 11, 2025 10:22 AM
SCT-Crim-2023-0017
**VERONICA HANDY, ESQUIRE**
**CLERK OF THE COURT**

FOR PUBLICATION

## IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | | |
|---|---|---|
| **PEOPLE OF THE VIRGIN ISLANDS,** | ) | **S. Ct. Crim. No. 2023-0017** |
| Appellant/Plaintiff, | ) | Re: Super. Ct. Crim. No. 301/2022 (STX) |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **EDDISON THOMAS,** | ) | |
| Appellee/Defendant. | ) | |
| | ) | |
| | ) | |

On Appeal from the Superior Court of the Virgin Islands
Division of St. Croix
Superior Court Judge: Hon. Harold W.L. Willocks

Considered: December 12, 2023
Filed: March 11, 2025

Cite as: 2025 VI 9

BEFORE: **RHYS S. HODGE**, Chief Justice; **MARIA M. CABRET**, Associate Justice; and
**IVE ARLINGTON SWAN**, Associate Justice.

APPEARANCES:

**Ian S.A. Clement, Esq.**
Assistant Attorney General
St. Thomas, U.S.V.I.
   *Attorney for Appellant*,

**Renee D. Dowling, Esq.**
St. Croix, U.S.V.I.
   *Attorney for Appellee*.

## OPINION OF THE COURT

**SWAN, Associate Justice**.

*People v. Thomas*
S. Ct. Crim. No. 2023-0017
Opinion of the Court
Page **2** of **22**

2025 VI 9

¶ 1     Appellant People of the Virgin Islands seeks to vacate the March 23, 2023 oral order—and subsequent April 27, 2023 written order—of the Superior Court of the Virgin Islands granting Appellee Eddison Thomas' February 1, 2023 motion to suppress tangible and derivative evidence. For the reasons elucidated below, the aforementioned orders are reversed and the matter is remanded to the Superior Court with instructions to take further action consistent with this Court's opinion.

## I.     FACTS AND PROCEDURAL HISTORY

¶ 2     This criminal matter commenced on November 27, 2022, when a probable cause fact sheet was filed in the Superior Court. An advice of rights hearing was held the following day. (Docket Nos. 1, 3.)

¶ 3     In the early morning hours of November 27, 2022, Officers George Clini and Mark Jones of the Virgin Islands Police Department ("VIPD") were dispatched to a grocery store known as "The Market" in Frederiksted, St. Croix, in response to a call concerning an alleged assault. (J.A. at 17, 18.) They were joined by VIPD Sergeant Hernandez. (J.A. at 65). Once there, the officers made contact with the complainant, Mrs. Unita Randolph Thomas, who stated that she had been assaulted by her husband, Appellee Eddison Thomas (J.A. at 18.) According to Mrs. Thomas, Appellee had arrived at the couple's shared home earlier that night, intoxicated, and had proceeded to physically assault her, pinning her to a wall and striking her in the head with both a closed fist and a black handgun, and only releasing her after the couple's minor children pleaded with him to stop. (J.A. at 18, 34, 64, 65.) Mrs. Thomas then left the residence and reported the incident to the police. (J.A. at 64, 65.) The responding officers observed bruising on Mrs. Thomas' face, corroborating her narrative, and asked if she could guide them to her home so that they could confront Appellee. (J.A. at 36, 37.)

*People v. Thomas*
S. Ct. Crim. No. 2023-0017
Opinion of the Court
Page **3** of **22**

2025 VI 9

¶ 4     Upon arrival at Mrs. Thomas' and Appellee's marital home, Mrs. Thomas opened the front door via keypad code and invited the officers inside, then proceeded to direct them to the master bedroom, where they found Appellee asleep on the bed. (J.A. at 37.) Mrs. Thomas pointed out a black handgun on a shelf in the bedroom closet, which Officer Jones observed but did not recover at the time. (J.A. at 37, 49, 55-56.) Upon subsequent recovery, the gun was found to contain a full magazine and a live round in the chamber. (J.A. at 65.)

¶ 5     After the officers had located the handgun, Sergeant Hernandez woke Appellee and questioned him regarding the gun and the evening's events. (J.A. at 38, 39.) Appellee responded that he had engaged in a physical altercation with his wife earlier that night, that the handgun was his, and that the gun was not registered, though he had been unsuccessfully attempting to register it for five years. (J.A. at 38.) At no time did Appellee ask the officers to leave his home or refuse to answer their questions. (J.A. at 39.) Based upon the testimony and evidence, the officers found cause to escort Appellee to the Wilber Francis Command Police Station, where he was read his *Miranda* rights and placed under arrest. (J.A. at 18.) Once at the police station, Appellee refused to provide any further account of the night's events. (J.A. at 65.) Appellee was held for the night without bail in accordance with the Territory's domestic violence statutes pending his advice of rights hearing. (J.A. at 66.)

¶ 6     An advice of rights hearing was held the next day, November 28, 2022, followed by arraignment on December 14, 2022. (Docket Nos. 3, 18.) Appellee was released on cash bail bond of $1,500 on November 28, 2022. (Docket Nos. 9-11.) On December 13, 2022, the People filed an information charging Appellee with one count of unauthorized possession of a firearm during the commission of a crime of violence, in violation of subsection (a) of section 2253 of title 14 of the Virgin Islands Code; one count of unauthorized possession of ammunition, in violation

*People v. Thomas*
S. Ct. Crim. No. 2023-0017
Opinion of the Court
Page 4 of 22

2025 VI 9

of subsection (a) of section 2256 of title 14 of the Virgin Islands Code; one count of assault in the third degree in an incident of domestic violence, in violation of subsection (a)(2) of section 297 of title 14 of the Virgin Islands Code and of subsections (b)(1) and (b)(2) of section 91 of title 16 of the Virgin Islands Code; one count of simple assault and battery in an incident of domestic violence, in violation of subsections (1) and (2) of section 299 of title 14 of the Virgin Islands Code and of subsections (b)(1) and (b)(2) of section 91 of title 16 of the Virgin Islands Code; and one count of disturbance of the peace, in violation of subsection (1) of section 622 of title 14 of the Virgin Islands Code. (J.A. at 67-69.)

¶ 7     On February 1, 2023, Appellee filed with the Superior Court a motion to suppress tangible and derivative evidence, requesting that the court suppress "any evidence seized in violation of the Fourth Amendment" and claiming that the police had recovered the handgun and ammunition in an unlawful warrantless search of Appellee's home. (J.A. at 13-15.) The People filed a response and opposition to Appellee's motion on February 16, 2023, maintaining that the search was lawful because Mrs. Thomas, Appellee's spouse, had common authority over the marital home and had consented to the search, and because Appellee himself did not object to the proceedings in his home at the time of the search and interview. (J.A. at 17-20.)

¶ 8     The matter came on for a suppression hearing on March 23, 2023. (J.A. at 22.) The People called Officer Jones as its witness. (J.A. at 27.) After both parties and the court examined Officer Jones, the court entered its findings on the record. (J.A. at 59, 60.) The court found that there was no unlawful entry, as Mrs. Thomas, who granted the officers consent to enter and search the home, possessed common authority over the home. (J.A. at 60.) However, the court found that the officers' questioning of Appellee regarding the firearm, without first advising him of his *Miranda* rights, was unconstitutional, and therefore granted Appellee's motion to suppress "as to the

*People v. Thomas*
S. Ct. Crim. No. 2023-0017
Opinion of the Court
Page 5 of 22

2025 VI 9

firearm." (J.A. at 7, 61.) While both the oral statement made by the court and the subsequent April 24, 2023 written order memorializing the verbal order are vague on the scope of the suppression, it appears to be understood by the parties that the consequence of the court's order was the dismissal of counts one and two of the five-count information: namely, one count of unauthorized possession of a firearm during the commission of a crime of violence, in violation of subsection (a) of section 2253 of title 14 of the Virgin Islands Code, and one count of unauthorized possession of ammunition, in violation of subsection (a) of section 2256 of title 14 of the Virgin Islands Code. (J.A. at 1, 2.) The People filed a notice of appeal on April 5, 2023, appealing the court's order granting Appellee's motion to suppress, pursuant to 4 V.I.C. § 33(d)(2). (Docket No. 42, J.A. at 1.)

## II.    JURISDICTION AND STANDARDS OF REVIEW

¶ 9    Prior to considering the merits of this matter, we must determine whether this Court has jurisdiction to consider the People's appeal from the Superior Court's order granting Appellee's motion to suppress. *V.I. Gov't Hosp. and Health Facilities Corp. v. Gov't of the V.I.*, 50 V.I. 276, 279 (V.I. 2008). In order to effectuate their appeal, the People must have adhered to the requirements of 4 V.I.C. § 33(d)(2):

> An appeal by the Government of the Virgin Islands shall lie to the Supreme Court from a decision or order of the Superior Court suppressing or excluding evidence . . . if the Attorney General conducting the prosecution certifies to the Superior Court judge that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.[1]

---

[1] Notably, the record in this matter reflects some confusion on the part of both the parties and the Superior Court regarding whether this appeal stems from a decision dismissing counts or from a decision suppressing evidence. In the former scenario, appeals to this Court would be governed by 4 V.I.C. § 33(d)(1); if the latter, then by 4 V.I.C. § 33(d)(2). The distinction is vital to this matter because appeals filed pursuant to 4 V.I.C. § 33(d)(2) must be certified as delineated in the statute, while appeals filed pursuant to 4 V.I.C. § 33(d)(1) are bound by no such requirement.

*People v. Thomas*
S. Ct. Crim. No. 2023-0017
Opinion of the Court
Page **6** of **22**

2025 VI 9

Upon review of the record, this Court can find no evidence that the People have filed the requisite certification in this matter. Nor, in fact, has either party seemed to notice the omission, as neither addressed the issue in its appeal brief or at oral arguments. In order to proceed, therefore, this Court must determine whether this issue is a jurisdictional issue or a non-jurisdictional, claims-processing issue. With respect to failures constituting jurisdictional issues that have not been raised by either party, the Court is obligated to raise the jurisdictional issue *sua sponte. See Hamer v. Neighborhood Hous. Servs. of Chicago,* 583 U.S. 17, 20 (2017). With errors concerning claims-processing rules, the Court shall deem such rules "waived if not asserted by a party because they serve to protect the interests of that particular party, and thus should not be invoked by courts *sua sponte.*" *Simon v. Joseph,* 59 V.I. 611, 629 (V.I. 2013). Accordingly, the first question before this Court is whether Appellant's failure to comply with 4 V.I.C. § 33(d)(2)'s certification requirement constitutes a jurisdictional defect, requiring dismissal for lack of jurisdiction, or a violation of a claims-processing rule, permitting this Court to proceed to the merits.

---

In the March 23, 2023 suppression hearing in this matter, the Superior Court made multiple statements appearing to conflate the actions of dismissing counts and suppressing evidence, stating that, due to a perceived *Miranda* violation, it would "suppress the charges" concerning the firearm and ammunition. While the court made this statement twice in its oral order at the suppression hearing, it nonetheless remains a nebulous declaration, one which this Court can only assume to be a misstatement of either an order to "suppress the evidence" or to "dismiss the charges." However, further review of the record allows this Court to satisfactorily determine that this matter properly falls under 4 V.I.C. § 33(d)(2) as an appeal from a decision suppressing evidence.

First, there is the evidence of the suppression hearing itself. Suppression hearings are held to address motions to suppress evidence. V.I. R. CRIM. P. 12(b)(3)(C). If, over the course of a suppression hearing, a court finds that there is good reason to suppress evidence, it may grant such a motion, leaving the government with the option of either dismissing any charges reliant upon said evidence or proceeding with such charges regardless. It is within the government's purview to decide whether to dismiss any charges related to suppressed evidence; that decision does not rest with the court at that juncture. Second, there is the fact that Appellant's notice of appeal specifically identifies the appeal as being filed pursuant to 4 V.I.C. § 33(d)(2). Additionally, the briefs of both parties, while occasionally using the same misleading language of the Superior Court concerning "dismissal" and "charges," primarily identify the matter as one concerning the suppression of evidence. Based on the foregoing, this Court holds that the evidence in the record overwhelmingly supports the characterization of this matter as an appeal from a decision suppressing evidence. Consequently, the appeal is subject to the requirements of 4 V.I.C. § 33(d)(2), including certification.

*People v. Thomas*                         2025 VI 9
S. Ct. Crim. No. 2023-0017
Opinion of the Court
Page 7 of 22

¶ 10    This Court has never directly addressed the issue of the certification requirement of 4 V.I.C. § 33(d)(2).[2] However, the issue has been raised in various federal courts, and we can therefore look to their holdings on the issue for guidance. The language and purpose of 4 V.I.C. § 33(d)(2) derive from Title 18, Section 3731 of the United States Code, which states, in part,

> An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

This portion of 18 U.S.C. § 3731 has frequently been at issue in federal courts, but rarely has it appeared in circumstances of an entirely omitted and overlooked certification. In most instances, the issue has arisen from a delayed or in some manner improper certification. *See United States v. Bates*, 146 Fed.Appx. 795, 797-98 (6th Cir. 2005) (the certification, filed several days after the government's appeal, was originally signed by an Assistant U.S. Attorney rather than the U.S. Attorney, an error that was later rectified); *United States v. Smith*, 263 F.3d 571, 578-79 (6th Cir. 2001) (the required certification was filed thirteen months after notice of appeal); *United States v. Lopez*, 518 F.3d 790, 794-95 (10th Cir. 2008) (certification was only filed after the court of appeals

---

[2] The issue has been raised before this Court once before, in *People v. Murrell*, 56 V.I. 796 (V.I. 2012), but the Court's ruling did not reach the issue, as explained in footnote 4 of our opinion in that matter:

> The parties disagree in their respective briefs as to whether any defect with the certification mandated by section 33(d)(2) represents a jurisdictional defect. Significantly, while Murrell frames his argument in jurisdictional terms, the People have noted that federal courts have held that the certification requirement codified in 18 U.S.C. § 3731 is not jurisdictional, and therefore the failure to timely file a certification — as opposed to a notice of appeal — does not mandate dismissal as a remedy. *See, e.g., United States v. W.R. Grace*, 526 F.3d 499, 506 n.4 (9th Cir. 2008) (collecting cases). Nevertheless, since the People have complied with the certification requirement, we decline, as part of this appeal, to determine whether the failure to timely file a section 33(d)(2) certification deprives this Court of appellate jurisdiction.

entered an order to show cause why the case should not be dismissed for lack of certification); *United States v. Salisbury*, 158 F.3d 1204, 1206-07 (11th Cir. 1998) (certification was filed one month after filing of the appeal, upon notification by the clerk of the court regarding its omission).

¶ 11     Federal courts have nearly unanimously held that errors in certification are not treated as jurisdictional issues but rather claims-processing errors. "A failure to file the certificate within thirty days is an irregularity in perfecting the appeal but does not operate to deprive the court of jurisdiction." *United States. v. Welsch*, 446 F.2d 220, 224 (10th Cir. 1971); *see also Lopez*, 518 F.3d at 795; *United States v. Shareef*, 100 F.3d 1491, 1509 n.2 (10th Cir. 1996); *United States v. Gantt*, 194 F.3d 987, 997 (9th Cir. 1999); *United States v. Salinas-Calderon*, 728 F.2d 1298, 1300 (10th Cir. 1984); *United States v. Eccles*, 850 F.2d 1357, 1359 (9th Cir. 1988); *United States v. Becker*, 929 F.2d 442, 445 (9th Cir. 1991); *Meier v. Keller*, 521 F.2d 548, 553 (9th Cir. 1975); *United States v. Crumpler*, 507 F.2d 624, 624 (5th Cir. 1975); *In Re Grand Jury Subpoena*, 175 F.3d 332, 337 (4th Cir. 1999). However, federal courts have also emphasized that the certification requirement "is not a mere formality." *United States v. Herman*, 544 F.2d 791, 794 (5th Cir. 1977); *see also United States v. Carrillo-Bernal*, 58 F.3d 1490, 1493 (10th Cir. 1995). Rather, the requirement "serves the very important purpose of ensuring that the prosecutor carefully analyzes the case before deciding to appeal." *Salisbury*, 158 F.3d at 1207; *see also Herman*, 544 F.2d at 800 n.4. Certification "forces the prosecutor to represent that she has, in fact, thoroughly and conscientiously considered the decision to appeal," thus "further[ing] the vital underlying goal of preventing needless delay and prolonged worry in criminal proceedings." *Salisbury*, 158 F.3d at 1207; *see also United States v. Miller*, 952 F.2d 866, 875 (5th Cir. 1992); *Carrillo-Bernal*, 58 F.3d at 1492-97. We must therefore impress upon the People that adherence to such claims-processing rules as certification pursuant to 4 V.I.C. § 33(d)(2) is absolutely vital

*People v. Thomas*
S. Ct. Crim. No. 2023-0017
Opinion of the Court
Page **9** of **22**

2025 VI 9

for maintaining public trust in the good-faith nature of the government's appeals. However, because Appellee in this matter has not sought dismissal due to the absence of certification at any juncture in this matter, we will deem the issue of compliance with this claims-processing statute waived, consistent with our precedent, and will proceed to consider the merits of the matter. *See Fuller v. Browne,* 59 V.I. 948, 953 n.3 (V.I. 2013).

¶ 12   "An appeal by the Government of the Virgin Islands shall lie to the Supreme Court from a decision or order of the Superior Court suppressing or excluding evidence." 4 V.I.C. 33(d)(2) "In reviewing the trial court's decision on [a] motion to suppress, 'we review its factual findings for clear error and exercise plenary review over its legal determinations.'" *People v. John,* 52 V.I. 247, 255 (V.I. 2009) (quoting *United States v. Shields,* 458 F.3d 269, 276 (3d Cir. 2006)) (internal quotations omitted).

¶ 13   "The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court." 4 V.I.C. § 32(a). We review findings of fact for clear error but exercise plenary review over the Superior Court's application of law. *St. Thomas–St. John Bd. of Elections v. Daniel,* 49 V.I. 322, 329 (V.I. 2007). Furthermore, when a case involves the interpretation of the United States Constitution, our standard of review is plenary. *Latalladi v. People,* 51 V.I. 137, 141 (V.I. 2009). Finally, we review the trial court's admission of evidence for abuse of discretion. *Corriette v. Morales,* 50 V.I. 202, 205 (V.I. 2008).

## III.   DISCUSSION

### A. The Superior Court Erred in Suppressing Physical Evidence and Dismissing Charges under *Miranda*

¶ 14   At the March 23, 2023 suppression hearing, after hearing testimony from Officer Jones, the Superior Court gave a verbal ruling on the record. (J.A. at 59-61.) The court found that the

*People v. Thomas*
S. Ct. Crim. No. 2023-0017
Opinion of the Court
Page **10** of **22**

2025 VI 9

search and seizure of Appellee's handgun and ammunition was constitutional because Mrs. Thomas, who consented to a search, led the police officers into the home, and pointed out the gun in Appellee's bedroom closet, had common authority over the shared marital home. (J.A. at 60). Despite this finding, however, the court then ruled that the firearm and ammunition be suppressed and that the counts regarding them be "suppressed," because "the questioning of [Appellee] concerning [the] firearm, without his being advised of his [*Miranda*] rights, itself create[d] an issue as to the fruit of the poisonous tree." (J.A. at 60, 61.) The court did not elaborate on its reasoning, either on the record or in the scant April 24, 2023 written order memorializing its verbal ruling.

¶ 15    In the ubiquitous 1966 *Miranda v. Arizona* case, the Supreme Court of the United States held that custodial interrogations have the capacity to undermine the U.S. Constitution's Fifth Amendment privilege against self-incrimination by potentially exposing suspects to physical or psychological coercion. 384 U.S. 436, 446-50, 467 (1966). To defend against such undue influence, the Court created a prophylactic procedural process requiring that a suspect be duly warned prior to the commencement of custodial interrogation. *Id.* at 444. Absent an advance warning of a suspect's Fifth Amendment rights, any pretrial statements made during custodial interrogation are inadmissible at trial. *Missouri v. Seibert,* 542 U.S. 600, 611-612 (2004). However, the Supreme Court has limited the remedy for a *Miranda* violation to the exclusion of only the testimonial evidence obtained in violation of *Miranda*, and not the physical evidence derived from an unwarned but otherwise voluntary confession. *Michigan v. Tucker*, 417 U.S. 433, 451-52 (1974). A three-justice plurality further explained that:

> the *Miranda* rule is a prophylactic employed to protect against violations of [the] Self-Incrimination Clause. . . . [T]he core protection afforded by the Self-Incrimination Clause is a prohibition on compelling a criminal defendant to testify

against himself at trial. . . . The Clause cannot be violated by the introduction of nontestimonial evidence obtained as a result of voluntary statements.

*United States v. Patane*, 542 U.S. 630, 636-37 (2004).

¶ 16    Put simply, courts have rejected the proposition that "the fruit of the poisonous tree doctrine, which, in the Fourth Amendment context, requires the exclusion of evidence or confessions obtained as a result of a constitutional violation, extends to violations of the *Miranda* decision." *United States v. DeSumma*, 272 F.3d 176, 180 (3d Cir. 2001) (quoting *United States v. Johnson*, 816 F.2d 918, 922 (3d Cir. 1987) (holding that the gun police recovered because of voluntary statements made in violation of the *Miranda* rule was properly admissible)).

¶ 17    However, the exclusionary rule will apply to suppress evidence stemming from a Fourth Amendment violation as well as evidence derived from involuntary statements obtained in violation of the *Miranda* rule. *Wong Sun*, 371 U.S. 471, 488 (1963); *U.S. v. Jacobs*, 431 F.3d 99, 108 (3d Cir. 2005). Thus, the first portion of this analysis will inquire whether Thomas's Fourth Amendment rights were violated, and the second portion will assess whether the statements regarding the firearm were made involuntarily.

¶ 18    Applying the directives of the United States Supreme Court regarding remedies for violations of *Miranda* to the matter now before this Court, it is evident that, were the questioning of Appellee regarding the handgun found to be a violation of Appellee's Fifth Amendment right against self-incrimination, the remedy would be the exclusion of Appellee's statements concerning the handgun, not the exclusion of the handgun itself. Had the court found that the search of Appellee's home was illegal, the physical evidence obtained through that search may properly have been suppressed as fruit of the poisonous tree. "[E]vidence obtained through unreasonable searches and seizures is excluded from use in criminal prosecutions." *People v. Santana*, 63 V.I.

*People v. Thomas*
S. Ct. Crim. No. 2023-0017
Opinion of the Court
Page **12** of **22**

2025 VI 9

25, 29 (V.I. 2014) (citing *Mapp v. Ohio*, 367 U.S. 643, 654–57 (1961)). However, the court instead found that the search itself was valid, as Mrs. Thomas, Appellee's spouse who shared common authority over the marital home, invited the officers inside and directed them to the handgun. The Superior Court therefore erred in suppressing the handgun and ammunition as a remedy for what it incorrectly perceived as a violation of Appellee's Fifth Amendment rights.

¶ 19    The court further erred in stating that, due to the perceived *Miranda* violation, it would "suppress the charges" concerning the firearm and ammunition. While the court made this statement twice in its oral order at the suppression hearing, it nonetheless remains a nebulous declaration, one which this Court can only assume to be a misstatement of either an order to "suppress the evidence" or to "dismiss the charges." As discussed above, if the court intended to suppress physical evidence as a remedy to a *Miranda* violation, it did so in error. However, if the court instead meant to dismiss the charges relating to the handgun and ammunition, it likewise committed error.

¶ 20    Suppression hearings are held to address motions to suppress evidence. V.I. R. CRIM. P. 12(b)(3)(C). If, over the course of a suppression hearing, a court finds that there is good reason to suppress evidence, it may grant such a motion, leaving the government with the option of either dismissing any charges based upon that evidence or proceeding with such charges without relying on that evidence. It is within the government's purview to decide whether to dismiss any charges related to suppressed evidence; that decision does not rest with the court at that juncture. Accordingly, this Court concludes that, regardless of the ambiguity of its intention, the Superior Court committed error whether it meant to suppress physical evidence or to dismiss charges, as the former is prohibited as a remedy for a *Miranda* violation and the latter is unavailable as an outcome of a suppression hearing.

*People v. Thomas*
S. Ct. Crim. No. 2023-0017
Opinion of the Court
Page 13 of 22

2025 VI 9

**B. The Warrantless Search of Appellee's Home and Seizure of the Handgun were not in Violation of Appellee's Fourth Amendment Right of Protection Against Unreasonable Search and Seizure**

¶ 21    The Fourth Amendment of the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. This assurance generally protects against the warrantless entry of the government into a person's home, either to seize property or to effectuate an arrest. *Payton v. New York*, 445 U.S. 573 (1980). However, this guarantee does not extend to circumstances in which either the subject of the search or a third party possessing common authority over the premises grants voluntary consent to the search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973); *United States v. Matlock*, 415 U.S. 164, 171 (1974). "'Common authority' rests 'on mutual use of the property by persons generally having joint access or control for most purposes.'" *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (quoting *Matlock*, 415 U.S. at 171 n. 7). "The burden of establishing that common authority rests upon the State." *Id.*

¶ 22    While the circumstances of each case must be carefully weighed to determine whether a third party possesses common authority over the subject premises, courts have regularly found that family members and spouses, in particular, have an assumed common authority over shared premises. *See United States v. Casey*, 825 F.3d 1, 16 (1st Cir. 2016) (grandparents had common authority over their own home and could consent to a search of live-in grandson defendant's bedroom); *United States v. Buckner*, 473 F.3d 551, 555 (4th Cir. 2007) (wife had common authority to consent to search of husband defendant's computer located in common living area of shared marital home); *United States v. Tosti*, 733 F.3d 816, 823-24 (9th Cir. 2013) (wife of defendant had common authority over the home the couple had shared for 20 years and could

consent to search of defendant's home office and computer); *United States v. Guillen*, 995 F.3d 1095, 1106 (10th Cir. 2021) (defendant's father, owner of the subject premises, had common authority to grant consent to search the son's bedroom). This authority stands even if the co-occupant defendant "later objects to the use of evidence so obtained." *United States v. Randolph*, 547 U.S. 103, 106 (2006). The primary exception to this rule is when a defendant co-occupant contemporaneously, at the time of the search, expressly refuses to consent. In such situations, "a physically present co-occupant's stated refusal to permit entry prevails, rendering the warrantless search unreasonable and invalid as to him." *Id.*

¶ 23     Here, the People bore the burden of proving at the suppression hearing that Mrs. Thomas, who led officers into her home shared with Appellee and directed them to the handgun in Appellee's bedroom closet, had apparent common authority to do so, thus satisfying the co-occupant exception to Appellee's Fourth Amendment right against warrantless search and seizure. At the hearing, the People's witness Officer Jones testified that Mrs. Thomas identified herself to officers as Appellee's wife, stated that her husband had assaulted her with a handgun, and bore noticeable injuries that accorded with her account of the assault. Officer Jones further testified that Mrs. Thomas voluntarily led the officer to her home, opened the front door by entering a code into a keypad, and guided the officers through the home to the bedroom where Appellee was sleeping. She then directed them to the location of the handgun in the bedroom closet. Officer Jones stated that when Appellee was roused, he voluntarily answered the officers' questions and made no objection either to their presence in the home or their seizure of the handgun. At the close of the hearing, the Superior Court found that the People had met their burden of proving that Mrs. Thomas had common authority over the premises. We agree.

¶ 24    According to the record, Mrs. Thomas and Appellee lived together in the subject premises as husband and wife sharing a marital home. This fact, under ordinary circumstances, would commonly give either spouse an assumed authority over the premises generally. This presumed authority was reinforced by the fact that Mrs. Thomas knew the keypad code to unlock the front door and that she was able to guide the officers into the bedroom in which Appellee was sleeping with no suggestion of a lock on the bedroom door or of any other obstacle to gaining entry therein. While Appellee raised the question at the hearing of whether Mrs. Thomas regularly slept in the same bedroom as Appellee, this Court deems that issue to be of little import. As Officer Jones stated at the hearing, it is often generally assumed that a married couple has common authority over bedrooms in the marital home and, as stated above, no evidence was presented that Mrs. Thomas was in any way obstructed from entering the bedroom, nor did Appellee object to the presence of either Mrs. Thomas or the police officers in the bedroom upon being awoken. Accordingly, this Court holds that the People successfully met their burden of proving that Mrs. Thomas had apparent authority over the subject premises, and thus that the search and seizure conducted with her consent, and with no contemporaneous objection from Appellee, was valid. Consequently, the fruits of that search, including the handgun and the ammunition located in its attached magazine, were validly seized and are not subject to suppression on Fourth Amendment grounds.

### C. Appellee's Statements Regarding the Firearm were made Voluntarily

¶ 25    The burden is on the People to establish, by a preponderance of the evidence, that a challenged statement is voluntary. *Jacobs*, 431 F.3d at 109. "A necessary predicate to a finding of involuntariness is coercive police activity. Further, there must be some causal connection between the police conduct and the confession." *Id*. at 108.

¶ 26    A statement is involuntary when the suspect's will is overborne in such a way as to render his confession the product of coercion. *Lam v. Kelchner*, 15 F.3d 256, 264 (3d Cir. 2002).  Courts look to the totality of the circumstances to determine whether a statement was voluntary and consider:

> not only the crucial element of police coercion; the length of the interrogation; its location; its continuity; the defendant's maturity; education; physical condition; and mental health . . . [but also] the failure of police to advise the defendant of his rights to remain silent and to have counsel present during a custodial interrogation.

*United States v. Swint*, 15 F.3d 286, 289 (3d Cir. 1994).

¶ 27    Here, the totality of the circumstances suggests that Thomas's statements were voluntary.  Thomas was not restrained or handcuffed.  (J.A. 38.)  He was not subjected to repeated or prolonged questioning.  (J.A. 38-39.)  Thomas was cooperative throughout Sergeant Hernandez's questioning.  (J.A. 39); see *United States v. Vidal*, 85 Fed. Appx. 858, 863 (3d Cir. 2004) (concluding that a defendant was "not subject to much less overcome by coercive tactics [where] he appeared to be calm and was cooperative throughout the questioning").  Further, there is nothing to suggest that Thomas's age, education, or intelligence would have impacted the voluntariness of his statements.  Under the circumstances, this Court concludes that the People has met its burden in establishing that Thomas's statements were voluntary.

¶ 28    Because Thomas's statements were made voluntarily, the limited remedy of a *Miranda* violation does not extend to bar admission of the physical evidence derived from the statements; thus, the Superior Court erred in suppressing the firearm and ammunition on this basis.

### D. Appellee's Statements Regarding the Firearm were not made Subject to Custodial Interrogation

¶ 29    While the Superior Court erred in suppressing physical evidence—the handgun and the ammunition—consequent to its finding that Appellee had been subjected to unlawful custodial interrogation, of Appellee's *statements* regarding the handgun could properly be suppressed upon such a finding.  Accordingly, it is incumbent upon this Court to determine whether the officers' questioning of Appellee in Appellee's bedroom regarding the handgun did, in fact, constitute unlawful custodial interrogation.

¶ 30    Appellee argues that the officers violated his Fifth Amendment privilege against self-incrimination by questioning him in his bedroom about the night's events and about the handgun found in his closet without first advising him of his constitutional rights under *Miranda*.  However, *Miranda* warnings need only be given when a suspect is simultaneously in custody and subjected to governmental interrogation.  *See Illinois v. Perkins*, 496 U.S. 292, 297 (1990) (finding that the combination of custody and interrogation "may create mutually reinforcing pressures" upon a defendant to confess against his or her will); *see also J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011) (determining that *Miranda* warnings are only required when a defendant is interrogated while in custodial holding).

¶ 31    "Custody" has been defined by the Supreme Court as the denial of "freedom of action … in any significant way." *Miranda*, 384 U.S. at 467.  Determinations of custody rely upon considering the "circumstances surrounding the interrogation" and whether "given those circumstances, … a reasonable person [would] have felt … at liberty to terminate the interrogation and leave." *J.D.B.*, 564 U.S. at 270 (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).  The determination rests upon the objective test of whether a reasonable person under the circumstances of the interrogation would find those circumstances to be coercive. *Id.* at 275-77; *see also Yarborough v. Alvarado*, 541 U.S. 652, 667-69 (2004) (the objective test was devised to

*People v. Thomas*
S. Ct. Crim. No. 2023-0017
Opinion of the Court
Page 18 of 22

2025 VI 9

give police clear guidance and requires no consideration or analysis of a suspect's personal characteristics). While circumstances vary immensely, those interrogations held while a defendant is in handcuffs or while—or after—a defendant has been held at gunpoint are more likely to be considered coercive, and therefore custodial. *See, e.g., United States v. Bailey,* 743 F.3d 322, 341 (2d Cir. 2014) (defendant was found to be in custody when interrogated while handcuffed because, despite officer's assurance that defendant was not under arrest but merely "detained," a reasonable person would associate being handcuffed with a formal arrest); *Rivera v. Thompson,* 879 F.3d 7, 14 (1st Cir. 2018) (defendant was found to be in custody at the time of interrogation, despite no formal arrest, because officer stopped defendant at gunpoint). The location of interrogation weighs considerably in determining the question of custody, with police station interrogations being far more likely to be deemed "custodial" than interrogations conducted in a defendant's home or in another location with which a defendant is familiar or comfortable. *See Stansbury v. California,* 511 U.S. 318, 326 (1994) (per curiam) (interrogation in a police station may be deemed custodial, dependent upon objective circumstances); *see also Beckwith v. United States* 425 U.S. 341, 345-47 (1976) (interrogation deemed noncustodial as suspect was interviewed at home); *United States v. Melo,* 954 F.3d 334, 343 (1st Cir. 2020) (defendant was not in custody when questioned at home with only a limited number of officers present in the house). The burden to prove custodial status rests with the defendant. *United States v. Davis,* 792 F.2d 1299, 1309 (5th Cir. 1986).

¶ 32    In this case, this Court concludes that Appellee has not met his burden of proving custodial status. The particular circumstances under which Appellee was interviewed by police were not those which a reasonable person would be likely to find coercive. Appellee was in his own home, in which only three officers were present. Only one officer, Sergeant Hernandez, questioned Appellee. Nothing on the record suggests that Appellee was held at gunpoint or handcuffed at any

*People v. Thomas*
S. Ct. Crim. No. 2023-0017
Opinion of the Court
Page **19** of **22**

2025 VI 9

point either before or during his questioning. Appellee was intimately familiar with his surroundings and there is no indication on the record that he either attempted or was restrained from moving about at will. The questioning in the home was, by all accounts, relatively brief, and at no point did Appellee indicate, either verbally or otherwise, a desire to stop the questioning or leave the area. Upon application of the objective test to determine the presence or absence of custody, this Court holds that the Appellee has not proved that he was being held in custody when he was interrogated about the handgun. Accordingly, we reverse the Superior Court's ruling granting Appellee's motion to suppress and determine that the fruits of Appellee's questioning, namely, Appellee's statements about the handgun, were lawfully acquired.

E. **The People Failed to Prove that the Evidence Obtained from Appellee's Statements Regarding the Handgun Should be Allowed Under the Inevitable Discovery Exception to the *Miranda* Exclusionary Rule**

¶ 33 Although we have determined that Appellee's statements concerning the handgun were not made under the circumstances of custodial interrogation, and are therefore not subject to suppression under *Miranda*, we will briefly analyze the People's alternate argument regarding the inevitable discovery doctrine. The People argue in their brief that, even were this Court to find that Appellee's statements were made in violation of his Fifth Amendment privilege against self-incrimination, the information derived therefrom would fall under the doctrine of inevitable discovery. Specifically, the People assert that the information derived from Appellee's statement that he did not have a license for his handgun would inevitably have been speedily corroborated through the routine police procedure of checking the registration status of all seized firearms. The People therefore maintain that the information regarding the handgun's registration status falls under the inevitable discovery exception to the *Miranda* exclusionary rule and therefore should

not have been suppressed even if this Court were to agree that the statements themselves should have been suppressed. In similar cases, the burden is on the prosecution to establish that discovery was actually inevitable based upon "demonstrated historical facts capable of ready verification or impeachment." *Nix v. Williams,* 467 U.S. 431, 448-50 (1984). Here, the government has failed to meet that burden.

¶ 34    Under the inevitable discovery exception to the exclusionary rule, courts may admit evidence that has been deemed illegally obtained if the prosecution has provided a sufficient showing that such evidence would inevitably have been discovered through lawful, independent means. *See United States v. Bradley,* 959 F.3d 551, 557 (3rd Cir. 2020) (the inevitable discovery exception applies when the prosecution submits "testimony regarding standard practices" and routine police procedures into evidence demonstrating that such routine procedures would inevitably have uncovered the evidence in question). "The key question under the inevitable discovery doctrine is whether 'the Government *has shown by a preponderance of the evidence* that routine police procedures inevitably would have led to the discovered' evidence." *United States v. Alexander,* 54 F.4th 162, 174 (3rd Cir. 2022) (quoting *United States v. Stabile,* 633 F.3d 219, 245 (3rd Cir. 2011)) (emphasis added). Upon review of the trial record, this Court holds that the People have failed to make a showing that the information regarding the handgun's status, as obtained through Appellee's statements, would inevitably have been independently procured through routine police procedures. Moreover, this Court has little doubt that the VIPD's routine registration check of seized firearms would have produced independent, legal corroboration of the information obtained through questioning. However, in this case the *record* reflects no argument or evidence to that effect having been made at any time before the Superior Court, either in writing or through testimony. Instead, the inevitable discovery doctrine, the routine nature of the

*People v. Thomas*
S. Ct. Crim. No. 2023-0017
Opinion of the Court
Page **21** of **22**

2025 VI 9

aforementioned police procedures, and the arguments thereupon are all mentioned for the first time in the People's appellate brief. Accordingly, this Court finds that the People have failed to prove that the information provided through Appellee's questioning should be allowed under the inevitable discovery exception. However, as this Court has already determined the information to be allowable for other reasons, the above analysis is not consequential to our holding in this matter.

## IV. CONCLUSION

¶ 35    The Superior Court was correct in finding that Appellee's Fourth Amendment right against improper search and seizure was not violated in the November 27, 2022 search of his home, as Appellee's wife, Mrs. Thomas, possessed common authority over the premises and consented to the search. However, the court abused its discretion in suppressing Appellee's handgun and ammunition as evidence and committed clear error in dismissing the counts related thereto. Not only was the Superior Court incorrect in finding that Appellee had been subject to custodial interrogation when he made statements regarding the handgun, but the court also erroneously suppressed physical evidence as a remedy for the supposed violation of Appellee's Fifth Amendment rights, when in fact such remedy only includes physical evidence if statements are made involuntarily. Appellee's statements were made voluntarily and were not made under custodial interrogation; therefore no violation of Appellee's Fifth Amendment rights against self-incrimination was committed. Accordingly, no suppression of either physical or testimonial evidence is warranted. Consequently, the Superior Court's March 23, 2023 oral order and subsequent April 24, 2023 written order granting Appellee's motion to suppress are reversed and the matter is remanded to the Superior Court for further action consistent with this Court's opinion.

2025 VI 9

Dated this 11th day of March, 2025.

BY THE COURT:

**IVE ARLINGTON SWAN**
Associate Justice

ATTEST:
**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

**By:**    /s/ Jahkyda Coakley
          **Deputy Clerk II**

**Date:** March 11, 2025